<hr />

THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. JOSEPH FLANAGAN, PLAINTIFF IN ERROR.

Submitted July 5, 1912—Decided November 11, 1912.

1. On trial of a defendant for manslaughter in pushing one from a trolley car, causing his death, evidence of the disorderly conduct of the defendant towards others on the car just prior to the embarking of the deceased, and the act of the defendant which caused his death, was allowed to show his state of mind and continuity of disposition towards those about him on the car. *Held*, that this was competent, as evincing his state of mind as carried forward and exhibited in a criminal act.
2. A request by defendant that the court charge the jury that "it is necessary before they can convict the defendant they must be convinced of his guilt by the evidence, that there can be no probability of his innocence, and no reasonable doubt of his guilt, and if there is probability of his innocence, this is a just ground for reasonable doubt" was properly refused. Probability of innocence always exists until overthrown beyond reasonable doubt.

<hr />

On error to Union County Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON and BERGEN.

For the state, *C. Addison Swift.*

For the defendant, *John R. Connolly* and *William R. Wilson.*

The opinion of the court was delivered by

BERGEN, J.   The defendant was convicted of manslaughter, and while the record brought here for review by defendant's writ of error contained a bill of exceptions, as well as a certificate of the entire record, under sections 136 and 137 of our Criminal Procedure act (*Pamph. L.* 1898, *p.* 866), the argument is confined to the specified causes for reversal under the procedure act.   The outline of the acts of the defendant, which are claimed to constitute the offence of which he was convicted, is substantially as follows:   The defendant, with two companions, boarded a trolley car; the defendant, remaining on the rear platform, began abusing the conductor, calling him offensive names, using insulting language calculated to arouse his anger, whereupon he left the platform and stood inside the car, until it reached the place where Miller, the deceased, who was one of the trolley company's inspectors, was standing.   The motorman beckoned to the inspector, who got upon the rear platform where defendant was standing, and after the car had gone some distance the defendant, while the car was still in motion, started to get off, which Miller tried to prevent by putting his arm over the entrance to the car steps, when the defendant, according to the state's case, pushed him off, and his head striking the pavement, he was killed, at the same time defendant fell from the car on the deceased.

The defendant denied using the abusive language charged, and said that when he got off he saw an opening between Miller's arms and thought he could get through, and when he ducked to go under, someone grabbed his collar, and when he got up from the street he did not know Miller had fallen.

The first point argued assails the ruling of the trial court in admitting proof of what the defendant said and did while on the car, and before Miller embarked.   The defendant cites no cases in support of his theory that this evidence was not competent.   If the contention of the defendant was correct, and this evidence was rejected, all that would appear was that the defendant had pushed Miller from the car while he was trying to save defendant from injury, a most unusual

act by one, who was an orderly, law abiding person, and would tend to enhance the credibility of the defendant, while on the other hand if the immediate conduct of the defendant was as disorderly as described, it would tend to explain his act in pushing Miller from the car, as the culmination of his disorderly and offensive conduct towards those on the car and the continuance of a vicious state of mind.

As was said by Mr. Justice Garrison, speaking for the Court of Errors and Appeals in *State* v. *Deliso,* 46 *Vroom* 808: "The question there is not the establishment of the defendant's guilt in respect to such isolated transaction, but the state of mind therein evinced by him, if it be shown to have been carried forward and exhibited in a criminal act so nearly related in time, place and circumstances that the mental state involved is practically continuous."

The case under consideration falls within the rule thus laid down. A disposition to be ugly and quarrelsome with the conductor, without apparent reason, exhibits a state of mind pertinent to the inquiry whether he was as docile towards the inspector as he affirms he was.

A discretion as to conditions under which this class of testimony is admissible must be accorded to the trial judge, and we are of the opinion that it was not abused in this case to the manifest wrong and injury of the defendant.

The next specification argued is the twelfth, and is based upon the alleged refusal of the court to charge as follows: "That the law presumes the defendant to be innocent, and in order to convict him of the crime of which he stands charged, every fact necessary to constitute such crime must be proved beyond a reasonable doubt, and if the jury entertained any reasonable doubt on any single fact or element necessary to constitute the crime, it is the duty of the jury to give the defendant the benefit of such doubt and acquit him."

It is difficult to understand the basis for the allegation that this request was not charged, for by reference to the charge as shown in the record, we find that the court said: "I have been asked to charge on the subject of reasonable doubt, and I will charge one or two of the requests," and

following this the court read the first, second and third requests, and then proceeded to instruct the jury on other matters. The court certainly in instructing the jury that he would charge one or two of the requests, and then proceeding to read them, cannot be said to have refused.

The thirteenth specification objects to what the court said to the jury with reference to the evidence regarding the state of mind of the defendant, the instruction complained of being "and it is for you to say whether the conduct of the defendant was such as to show that he was in an ugly state of mind or in a state of mind to lead him to some disorderly act." If the evidence was properly admitted, and we have so held, this comment was not objectionable.

Objection is also made to the refusal of the court to charge a request which contained this paragraph, "but it is necessary before they can convict the defendant, they must be convinced of his guilt by the evidence, that there can be no probability of his innocence, and no reasonable doubt of his guilt. And if there is probability of his innocence this is just ground for reasonable doubt, and requires acquittal."

We are of opinion that this request was properly refused. It is not a question of probability of innocence, but of reasonable doubt of guilt that is required to exist. The presumption or probability of innocence always exists until it is overthrown beyond reasonable doubt.

We have examined all of the other specifications and find nothing in them which requires further discussion.

The judgment below will be affirmed.