149 N.J. Super. 220 (1977)
373 A.2d 680
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
HENRY HARRISON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted April 5, 1977.
Decided April 29, 1977.
*222 Before Judges LORA, CRANE and MICHELS.
Mr. Stanley C. Van Ness, Public Defender, attorney for appellant (Ms. Ellen Shiever, Assistant Deputy Public Defender, of counsel and on the brief).
Mr. Joseph P. Lordi, Essex County Prosecutor, attorney for respondent (Mr. David B. Glazer, Assistant Prosecutor, of counsel and on the brief).
PER CURIAM.
Henry Harrison was charged with robbery of a paycheck in the amount of $55 (N.J.S.A. 2A:141-1) and being armed (N.J.S.A. 2A:151-5). The jury returned a verdict of guilty of larceny from the person (N.J.S.A. 2A:119-1) on the first count and not guilty on the second count. Defendant was sentenced to a term of 12 months at the Essex County Correction Center. A motion for a new trial was denied.
Defendant appeals, contending that (1) the trial judge erred in refusing to charge the jury on ordinary larceny, pursuant to N.J.S.A. 2A:119-2, (2) the charge on reasonable doubt constituted plain error, (3) the prosecutor made prejudicial statements in his summation which denied *223 defendant a fair trial, and (4) the prosecutor made an improper reference to defendant's prior criminal record in his opening statement which constituted reversible error.
The alleged victim, Wendell Daniels, testified that he had left a check-cashing facility on Broad Street in Newark where he had attempted to cash a paycheck for $55.02 he had received from his employer and which the check-cashing facility had refused to cash because he did not have proper identification. The check and his Social Security card were placed in an envelope in his inside pocket. On the sidewalk Daniels was approached by a tall man who spoke with a Jamaican accent and who asked Daniels the location of a certain hotel where he said he was supposed to meet a girl. The man asked Daniels to show him to the hotel but Daniels refused, stating that he was in a hurry.
At this point defendant Henry Harrison approached and Daniels suggested to the Jamaican that defendant might be able to help him, whereupon the Jamaican told defendant the story about the girl in the hotel and said that he would pay if Daniels and defendant would show him the way.
The Jamaican promised Daniels $25. He then pulled a roll of bills from his pocket and handed $100 to defendant. Daniels started to walk away but the Jamaican pulled him back. Daniels repeated that he was in a hurry and had to go. He then observed what appeared to be a gun barrel protruding under a newspaper Harrison had draped over his hand. Either the Jamaican or Harrison told Daniels to get into the car parked in front of the check-cashing facility. Daniels slid across the back seat to the driver's side. Harrison got into the driver's seat and the Jamaican sat next to Daniels. The Jamaican took the envelope with the check and Social Security card from Daniels and said that the Social Security card wasn't good enough, that they needed more identification. He then pushed Daniels over and removed Daniels' wallet from his back pocket, took his draft card and threw the wallet back to Daniels.
*224 Daniels stated that the Jamaican did not have a Jamaican accent when he spoke in the automobile. After a short ride, Daniels was permitted to leave the car. He immediately notified the police and on police advice notified his employer to stop payment on the check. On cross-examination Daniels conceded that in a statement given to the police he had said that the incident occurred across the street from the check-cashing facility and that neither the Jamaican nor defendant had verbally threatened him. However, Daniels made it clear that he was afraid because he thought defendant had a gun, admitting, however, that he was not sure whether defendant's newspaper concealed a gun or a pipe.
Daniels' grand jury testimony indicated that he alleged at that time that it was defendant who took his check and Social Security card, not the Jamaican. At trial he insisted, however, that his trial testimony was the truth.
Defendant Harrison testified in his own defense and stated that on the day in question he was visiting one Robert Henry at the Belmont Hotel in Newark, located across the street from the check-cashing facility in front of which the incident here involved occurred. Henry asked defendant if he wanted to make some money and described the "handkerchief game." Thereafter, defendant went to the corner of Broad and West Kinney Streets while Henry proceeded to a spot approximately 100 yards from the check-cashing facility. Neither he nor Henry had a car parked on Broad Street that day.
Harrison stated that Henry stopped Daniels as the latter emerged from the check-cashing facility and spoke to him. Upon a prearranged signal defendant walked in the direction of the pair. As he neared them Daniels stopped him and asked if he knew the location of a certain hotel. Defendant said that he did and began to walk away. Henry displayed a large amount of play money with a real $5 bill on top and offered defendant and Daniels each $10 to help him find the hotel. They agreed, and the three began walking from Broad and West Kinney Streets to Mulberry Street.
*225 Henry then indicated that he wanted a prostitute. Defendant told him of a place nearby, whereupon Henry entered a bar in order to use the bathroom. While Henry was out of their presence, defendant told Daniels they should take Henry's money. He described a plan to Daniels, in which they would suggest to Henry that they hold his money to prevent the prostitute from stealing it. Daniels agreed. When Henry emerged from the bar the offer was made to hold his money. Henry agreed. Defendant then produced a handkerchief and Henry placed his money in it. Defendant, who said that he would accompany Henry into the hotel, did the same. Since Daniels had no cash, he placed his check, Social Security card and draft card in the handkerchief, defendant explaining that Henry wanted the two cards so that he would have the necessary identification to cash the check. Henry then tied the handkerchief and handed it to Daniels.
As Daniels started to place the handkerchief in his pocket, Henry took it back stating Daniels should keep the money "skin tight," demonstrating by placing the handkerchief inside his shirt. At this point he switched to a handkerchief filled with newspaper which he returned to Daniels. Defendant and Henry departed.
Defendant denied having a newspaper or gun during the incident, denied having a car at the scene and that Daniels was ordered to get into any type of vehicle. Defendant was unable to explain why Daniels did not complain when he was asked to put his identification in the handkerchief, even though, according to defendant's story, Daniels was to have his check returned to him. He simply stated that he did not know the handkerchief game until the day in question.
Defendant contends that, in view of the testimony outlined above, the trial judge committed reversible error in refusing to charge the jury on simple larceny.
The record indicates that after the close of all the evidence, the judge advised counsel that he was considering *226 charging the jury as to a lesser-included offense in addition to charging them as to robbery and being armed, as set forth in the indictment. Defense counsel argued that defendant's version of the facts constituted "larceny by trick" and that defendant was entitled to a charge which was consistent with that characterization of defendant's testimony. The prosecutor conceded that such a charge might be warranted.
The trial judge discussed the possibility of charging larceny of a check but finally decided not to do so. N.J.S.A. 2A:119-3 proscribes the stealing or taking by robbery or obtaining possession by false statements, representations or promises, of a negotiable or nonnegotiable instrument for the payment of money. However, since the indictment charged armed robbery of a check, in violation of N.J.S.A. 2A:141-1 and N.J.S.A. 2A:151-5, we believe that absent a count in the indictment charging a violation of N.J.S.A. 2A:119-3, the trial judge correctly decided not to charge larceny of a check under that statute. State v. Mergott, 140 N.J. Super. 126, 133 (App. Div. 1976).
While defense counsel did not in so many words request a charge on larceny, he persistently argued both before and after the charge to the jury that the charge as proposed and as given failed to include any crimes or offenses which were consistent with defendant's story, i.e., larceny by trick. In addition to robbery and being armed, the trial judge charged only the lesser-included offense of larceny from the person. N.J.S.A. 2A:119-1. The jury acquitted defendant of being armed and convicted him of larceny from the person.
Larceny from the person, for which defendant was convicted, and larceny, which defendant contends the trial judge should have charged, are lesser included offenses of the crime of robbery. State v. McDonald, 89 N.J.L. 421 (Sup. Ct. 1916), aff'd 91 N.J.L. 233 (E. & A. 1918); State v. Hoag, 35 N.J. Super. 555 (App. Div. 1955), aff'd *227 21 N.J. 496 (1956), aff'd 356 U.S. 464, 78 S.Ct. 829, 2 L.Ed.2d 913 (1958); State v. Ford, 92 N.J. Super. 356 (App. Div. 1966); State v. Bowden, 62 N.J. Super. 339 (App. Div. 1960).
It is clear that a trial judge is obliged to charge the jury as to a lesser-included offense 
* * * where [an] appropriate request for a suitable jury charge is made [and where] there is a rational basis in the evidence for a finding that the defendant was not guilty of the higher offense charged but guilty of the lesser included offense.
[State v. Saulnier, 63 N.J. 199, 206-207 (1973)]
Here, there was indeed a rational basis in the evidence for the trial judge to charge larceny from the person. In view of the sharply conflicting testimony with respect to the events leading up to the offense, the jury could reasonably conclude, as they apparently did, that there was no force or fear involved in the commission of the offense and that defendant was not armed. However, if defendant's story were believed, the facts he admitted would not support a conviction of larceny from the person. Larceny from the person is a taking of property from the person of another or from an area within his immediate custody and control which raises a danger of confrontation and involves an invasion of the victim's person and privacy but is not accomplished through the use of force or fear. State v. Blow, 132 N.J. Super. 487 (App. Div. 1975). Defendant claimed that Daniels voluntarily placed his paycheck in the handkerchief and that there was then no "taking" within the ambit of the statute proscribing larceny from the person.
There being no statute denominated "larceny by trick" and defendant not being charged under N.J.S.A. 2A:119-3, ordinary larceny, N.J.S.A. 2A:119-2, was the only additional lesser-included offense for which there was present a rational basis in the evidence for a charge thereon. See State v. Garvin, 44 N.J. 268 (1965), in which a conviction *228 for larceny in violation of N.J.S.A. 2A:119-2 was upheld where a defendant posed as a stranger with considerable cash in pocket and, assisted by an accomplice who pretended to have just happened along, led the victim to withdraw the balance of his savings account, thereby to persuade defendant that banks are places of safe deposit; the victim's cash, totalling $405, was purportedly wrapped with defendant's cash in a handkerchief and left with the victim for interim holding. There had been a switch, the handkerchief held newspaper.
We are of the view that defense counsel's repeated requests to charge a lesser-included offense consistent with his characterization of defendant's testimony as larceny by trick constituted an "appropriate request for a suitable jury charge" within the meaning of the two-part test enunciated in State v. Saulnier, supra, and that the trial judge erred in failing to charge on ordinary larceny. Accord, State v. Inman, 140 N.J. Super. 510 (1976). The charge as given effectively precluded the jury from finding defendant guilty of the offense he admitted  simple larceny. Rather, it compelled the jury to find defendant guilty of no less an offense than larceny from the person.
In light of the fact that the check stolen from the complaining witness had a value of $55 and that if defendant had been convicted of ordinary larceny he could have received a maximum six-month jail term for the disorderly person offense of larceny of less than $200, N.J.S.A. 2A:170-30.1, N.J.S.A. 2A:169-4, the trial judge's failure to charge ordinary larceny was clearly prejudicial and accordingly we are constrained to reverse. Moreover, we find without merit the State's assertion that the larceny of a check statute evidences a legislative policy that all thefts of checks be considered high misdemeanors and since defendant was convicted of the high misdemeanor of larceny from the person he has not been disserviced. Defendant was entitled to have submitted to the jury any and all offenses within the scope of the indictment consistent with *229 the factual patterns presented, and, if found guilty, that his judgment of conviction reflect a consonant offense.
Since the case must be retried, we deem it advisable to consider defendant's contention that the trial judge's charge on reasonable doubt constituted plain error.
During the course of his otherwise proper charge on reasonable doubt the trial judge stated:
It must, however, be a real and substantial doubt not for instance the ideal [sic] reflection that nothing is perfectly certain in this life. It is a doubt that bases itself on serious gaps or loopholes in the evidence that persists actively and positively. [Emphasis supplied]
The italicized portions of the charge are clearly erroneous and do not constitute a proper explanation of reasonable doubt.
With respect to defendant's contention that the prosecutor made prejudicial statements in his summation which deprived defendant of a fair trial, we have considered each of the remarks complained of and are satisfied that they were not improper and did not deny defendant a fair trial.
Finally, on the retrial we suggest that the State refrain from making any comment in its opening which could possibly be construed as being a reference to defendant's prior criminal record.
Reversed and remanded to the Law Division for a new trial.