198 N.J. Super. 64 (1984)
486 A.2d 852
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN BOYLE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 7, 1984.
Decided December 3, 1984.
*65 Before Judges MICHELS and BAIME.
*66 William E. Norris argued the cause for appellant (Joseph H. Rodriguez, Public Defender, attorney; Mr. Norris of counsel).
Gilbert Miller, Deputy Attorney General, argued the cause for respondent (Irwin I. Kimmelman, Attorney General, attorney; Mr. Miller, of counsel and on the letter-brief).
The opinion of the court was delivered by BAIME, J.A.D.
Following a jury trial, defendant was convicted of conspiracy to violate the Controlled Dangerous Substances Act. The trial court imposed a custodial term of three years and ordered defendant to pay a penalty of $25 to the Violent Crimes Compensation Board. On appeal, defendant contends that his inculpatory statement given to the Ocean County Prosecutor pursuant to a plea agreement which was subsequently abrogated was improperly admitted into evidence. Defendant argues that such a statement is per se involuntary and, therefore, must be suppressed. Defendant also contends that he was denied the effective assistance of counsel under the Sixth and Fourteenth Amendment. Our thorough review of the record convinces us that defendant's claim is wholly devoid of merit. Nevertheless, we are constrained to reverse defendant's conviction and remand for a new trial because of material deficiencies in the court's instructions to the jury.[1]
The facts essential to resolution of the issues presented here are not seriously disputed. In July, 1980, the Ocean County Prosecutor obtained a court authorized wiretap for defendant's home in Toms River. The affidavit submitted in support of the electronic surveillance application described a controlled purchase *67 of narcotics from defendant by a police informant. The drug transaction was successfully completed through the use of defendant's telephone. The wiretap authorization permitted the authorities to eavesdrop upon "anyone or any conversation in connection with offenses of controlled dangerous substances." During the surveillance period, numerous conversations pertaining to illicit drug transactions were recorded. Among those implicated were defendant and several members of his family. As a result of the information obtained through the use of the wiretap, defendant was arrested on November 10, 1980 pursuant to a warrant.
On November 13, 1980, defendant's retained attorney, Henry Collins, was contacted by the Ocean County Prosecutor. Based upon their conversation, Mr. Collins agreed to meet the prosecutor at his office. Present at the meeting were the prosecutor, two investigators, defendant and Mr. Collins. After reviewing several of the tape recorded telephone conversations implicating defendant and members of his family, the parties discussed the possibility of a plea agreement.
Under the initial proposal, the prosecutor agreed to recommend imposition of an indeterminate custodial term. He also promised not to pursue charges against other members of defendant's family. In return, defendant was to identify the voices on the tape. There is some dispute with respect to whether defendant agreed to testify against other members of the conspiracy. Defendant's attorney and the prosecutor's investigator testified that defendant was advised of the possibility that he would be required to testify against his confederates. Defendant vehemently denied that this constituted part of the plea agreement. In any event, defendant and his attorney were permitted to discuss the proposal in private. This engendered further negotiations pertaining to the possibility of reducing bail. After these issues had been resolved, defendant agreed to listen to the tape and cooperate in identifying other members of the conspiracy. Over the next three days, defendant, *68 in the presence of his attorney,[2] gave a detailed statement which was stenographically recorded. Subsequently, defendant refused to testify against others and entered a plea of not guilty.
Prior to trial, defendant sought to suppress his written statement. Specifically, defendant contended that he did not voluntarily waive his Fifth Amendment privilege and that his statement was obtained by way of coercion and intimidation. Significantly, defendant did not raise the argument presently advanced on appeal, i.e., that any statement made pursuant to a plea agreement which is subsequently abrogated must be suppressed. In any event, the trial judge found that defendant knowingly and intelligently waived his constitutional rights in the presence of his attorney. The court also concluded that the methods employed by the prosecutor and his investigators were not coercive and did not have the effect of overbearing defendant's will.
At trial, the State's evidence consisted primarily of the tape recorded telephone conversations interspersed with the investigator's testimony and defendant's statement. The record reflects that most of the telephone conversations were extremely guarded. Apparently, code language was often employed. In addition, many of the terms utilized in negotiating drug transactions were not of common parlance. Thus, defendant's statement was used to describe what was being discussed in the recorded telephone conversations.
Simply stated, it is abundantly clear that defendant's statement constituted a critical part of the State's case. The sole defense advanced at trial was that defendant's statement was coerced and involuntary. Nevertheless, the trial judge refused to instruct the jury that they were to decide whether defendant's *69 confession was credible. See State v. Hampton, 61 N.J. 250, 272 (1972). Although defense counsel requested such an instruction, the trial court's charge is barren of any allusion to defendant's statement. The jury found defendant guilty of conspiring to possess controlled dangerous substances with the intent to distribute. This appeal followed.

I
We will first address defendant's contention that his statement was improperly admitted. Succinctly stated, defendant argues that any statement made pursuant to a plea agreement which is subsequently abrogated is per se involuntary, and, thus, inadmissible. In essence, defendant asks us to adopt the policy set forth in Fed.R.Crim.P. 11(e)(6) which precludes admission of "any statement made in the course of plea discussions" where the accused ultimately decides to contest his guilt and proceed to trial. The same principle appears in Fed.R.Evid. 410 which renders inadmissible "any statement made in the course of plea discussions with an attorney for the prosecuting authority...."[3]See also ALI Model Code of Pre-Arraignment Procedure § 350.7 (Proposed Official Draft, 1975); ABA Standards Relating To Pleas of Guilty § 3.4 (Approved Draft, 1968). The federal practice is premised upon the theory that for "plea bargaining to work effectively and fairly, a defendant must be free to negotiate without fear that his statements will later be used against him." United States v. Herman, 544 F.2d 791, 796 (5th Cir.1977). See also United States v. Grant, 622 F.2d 308, 312-313 (8th Cir.1980); United States v. Robertson, 582 F.2d 1356, 1365 (5th Cir.1978); United States v. Ross, 493 F.2d 771, 775 (5th Cir.1974). Suppressing evidence of such *70 negotiations is said to "serve the policy of insuring a free dialogue" during the plea bargaining process. United States v. Robertson, supra at 1365. In considering the federal exclusionary rule, Congress suggested that absent such a shield the possibility of self-incrimination would "discourage defendants from being completely candid and open during plea negotiations...." H.R.Rep. No. 94-247, 94th Cong., 1st Sess. 7 (1975) U.S.Code Cong. & Adm.News, pp. 674, 679 (1975).
Although these policies have not been totally ignored in New Jersey, we have been much less inclined to grant broad immunity to defendants who participate in the plea negotiation process than our federal counterparts. In point of fact, the federal approach was considered and rejected when Evid.R. 52(2) was adopted. The Supreme Court's Committee on Evidence had initially proposed promulgation of a rule which totally precluded admission of a defendant's statements made during plea negotiations. Under the proposed rule, "[e]vidence that the defendant ... offered to plead guilty to a lesser offense, as well as any conduct or statements made in negotiations" would have been inadmissible. See The Report of the New Jersey Supreme Court Committee on Evidence (March 1963). Instead, a narrower approach was adopted. Thus, Evid.R. 52(2) presently provides that "[e]vidence that the defendant offered to plead guilty to a lesser offense or upon terms is inadmissible against him...." Read literally, the rule does no more than preclude admission of a defendant's offer to enter a plea agreement. It does not prohibit introduction of the accused's voluntary statements made during the plea negotiation process. As noted in the commentary to our Rules of Evidence, "Rule 52(2) refers only to plea offers, and not to admissions made during the course of bargaining between the State and the defendant." See New Jersey Rules of Evidence (Anno. 1984), Comment 3 to Evid.R. 52. In light of this history, we perceive no valid basis to construe the rule in a manner more expansive than its literal wording.
*71 Even were we to accept defendant's argument and adopt the federal rule, it is by no means clear that the statement would be inadmissible. The interpretative history of Fed.R.Crim.P. 11(e)(6) and Fed.R.Evid. 410 has been "checkered" and, as such, "difficulties are presented in any attempt at uniform application." United States v. Grant, supra at 312. See, e.g., United States v. Davis, 617 F.2d 677 (D.C. Cir.1979); United States v. Arroyo-Angulo, 580 F.2d 1137 (2d Cir.1978), cert. den. 439 U.S. 913, 99 S.Ct. 285, 58 L.Ed.2d 260 (1979); United States v. Levy, 578 F.2d 896 (2d Cir.1978); United States v. Stirling, 571 F.2d 708 (2d 1978), cert. den. 439 U.S. 824, 99 S.Ct. 93, 58 L.Ed.2d 116 (1979). In United States v. Davis, supra, for example, the Court of Appeals for the District of Columbia held that statements made pursuant to a plea agreement which was later unilaterally rejected by the defendant could be admitted against him. The court stated:
Excluding testimony made after  and pursuant to  the agreement would not serve the purpose of encouraging compromise. Indeed, such a rule would permit a defendant to breach his [agreement] with impunity: he could renounce the agreement and return to the status quo ante whenever he chose, even though the Government has no parallel power to rescind the compromise unilaterally. The drafters of rule 11(e)(6) could not have contemplated such a result. (citations omitted) Id. at 685.
Of similar import is United States v. Stirling, supra. There, the Court of Appeals for the Second Circuit rejected an attempt by the defendant to suppress statements given to the grand jury pursuant to a plea agreement which he subsequently abrogated. The court noted that defendant's statement was given "after formalization of a negotiated plea agreement and before" the accused's withdrawal. Id. at 731. In such a case, suppression would in no sense advance the policy underlying the federal rule. The court stated that "[s]uch a result can hardly be said to undercut the confidence and candor needed for successful plea negotiations. It simply means that once the agreement is finalized its terms will be enforced." Id. at 732.
Those principles apply with equal force here. There is nothing unfair in permitting admission of evidence voluntarily *72 given by a defendant pursuant to a plea agreement. We reject the proposition implicit in defendant's argument that a confession which results from a promise is automatically involuntary. The mere fact that a statement is the result of a plea agreement does not render it coerced. State v. Starling, 188 N.J. Super. 127, 131 (Law Div. 1983). That defendant's statement was given not to shed his inner burden, but rather in an attempt to minimize his exposure and protect his relatives from prosecution does not make it per se involuntary. Cf. State v. McKnight, 52 N.J. 35, 52 (1968). Rather, the test of involuntariness is whether "an examination of all the circumstances discloses that the conduct of law enforcement officials was such as to overbear [the accused's] will to resist and bring about confessions not truly self-determined...." United States v. Arcediano, 371 F. Supp. 457, 469 (D.N.J. 1974). Accordingly, the federal and state courts have held that the voluntariness of a custodial statement which is induced by official promises must be assessed under the totality of the circumstances. See State v. Starling, supra 188 N.J. Super. at 131-133. See also United States v. Glasgow, 451 F.2d 557 (9th Cir.1971); United States v. Silby, 535 F. Supp. 208 (E.D.Pa. 1982); People v. York, 189 Colo. 16, 537 P.2d 294 (S.Ct. 1975); Taylor v. Commonwealth, 461 S.W.2d 920 (Ky.Sup.Ct. 1970), cert. den. 404 U.S. 837, 92 S.Ct. 126, 30 L.Ed.2d 70 (1971); State v. Anderson, 298 N.W.2d 63 (Minn.Sup.Ct. 1980); Pontow v. State, 58 Wis.2d 135, 205 N.W.2d 775 (Sup.Ct. 1973).[4]
Contrary to defendant's argument, State v. Boone, 66 N.J. 38 (1974) does not point to a different conclusion. There, our Supreme Court held that a withdrawn plea of guilty is not *73 admissible in evidence in a subsequent criminal proceeding. See also Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927); R. 3:9-2. A careful reading of that decision indicates that it was premised primarily upon the need to protect the right of a defendant to withdraw his plea of guilty. Such a right has long been protected by our law particularly where it is exercised prior to imposition of sentence. State v. Taylor, 80 N.J. 353, 365 (1979); State v. Daniels, 38 N.J. 242, 249-250 (1962), cert. den. 374 U.S. 837, 83 S.Ct. 1885, 10 L.Ed.2d 1057 (1963); State v. Deutsch, 34 N.J. 190, 197-198 (1961). As noted by our Supreme Court, "[t]he privilege of withdrawal [would] indeed [be] a hollow one if evidence of the guilty plea [could] be used against the defendant in a subsequent trial." State v. Boone, supra 66 N.J. at 45. The theoretical underpinnings of the Boone decision are not applicable where the defendant unilaterally decides to abrogate a previously negotiated plea agreement. While we are solicitous of the constitutional right of an accused to contest his guilt by proceeding to trial, we discern no justifiable reason to preclude admission of his highly inculpatory statements made pursuant to a properly negotiated plea agreement. We, thus, hold that such a statement is admissible as long as the State satisfies the "high standards of proof for the waiver of constitutional rights." Miranda v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694, 724 (1966).

II
We now turn to the trial court's instructions. As noted previously, the trial judge refused to instruct the jury that they were to consider whether defendant's statement was credible. Despite defense counsel's clear request, the court's charge did not contain any reference to the statement. In State v. Hampton, supra, our Supreme Court held that the jury must be apprised of their duty to "decide whether in view of all [of the] circumstances the defendant's confession is true." Id. 61 N.J. at 272. So too, they are to be instructed that "[i]f they find *74 that it is not true, then they must treat it as inadmissible and disregard it for purposes of discharging their function as fact finders on the ultimate issue of guilt of innocence." Ibid. This principle is currently encompassed in Evid.R. 8(3) which mandates that the trial judge "shall instruct the jury that they are to disregard the statement if they find that it is not credible."[5]
We are convinced that the trial court's refusal to instruct the jury in accordance with State v. Hampton, supra, and Evid.R. 8(3) constitutes reversible error. The mandate in Hampton and the directive in the Rules of Evidence are designed to "insure to a defendant an unfettered factual consideration by the jury of the credibility" of all or part of his confession. State v. Bowman, 165 N.J. Super. 531, 537 (App. Div. 1979). In our view, defendant had a federal constitutional right to raise the issue of voluntariness before the trial judge and upon an adverse ruling to place in issue the credibility of his statement. Ibid. See also Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). The denial of this right was reversible error. In that regard, we do not perceive the error to be harmless in the context of this appeal. To be sure, the tape recorded telephone conversations constituted strong evidence of defendant's guilt. However, defendant's lengthy and detailed statement was crucial to the State's case. Under these circumstances, the statement deserves the closest scrutiny by the jury to determine whether it, or parts of it, were credible. The court's refusal to apprise the jury of its responsibility pertaining to the statement had the clear capacity to seriously prejudice defendant's rights. See State v. Green, 86 N.J. 281, 287-289 (1981).
*75 We are also concerned with the trial judge's definition of reasonable doubt. In that regard, the court stated that a reasonable doubt is not "something that is ... probable." Defense counsel's timely objection was denied. We believe that the instruction could have been interpreted by the jury as requiring it to refuse to grant the benefit of the doubt to the defendant unless it was of the highest or at least of a very high degree. See e.g., State v. Harrison, 149 N.J. Super. 220, 229 (App.Div. 1977) certif. den. 75 N.J. 525 (1977). See also Nester v. State, 59 N.J.L. 307, 308 (S.Ct. 1896). But see State v. Flanagan, 83 N.J.L. 379 (S.Ct. 1912), aff'd 84 N.J.L. 766 (E & A 1913). We are satisfied that the instruction does not constitute a proper explanation of reasonable doubt.
Accordingly, the judgment of conviction is reversed and the matter is remanded for a new trial.
NOTES
[1] In light of our decision reversing defendant's conviction, we need not address defendant's argument that trial counsel's conduct fell below an objective standard of reasonableness. See Strickland v. Washington, ___ U.S. ___, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Since the case must be retried, however, we have considered defendant's contention that a statement made pursuant to a plea agreement which is subsequently abrogated is per se inadmissible.
[2] Defendant's attorney was not present when defendant was interrogated on the afternoon of November 14, 1980. However, both defendant and his attorney agreed that questioning could continue in the latter's absence.
[3] For a discussion of the relationship between the two provisions, see United States v. Herman, 544 F.2d 791, 795-796 (5th Cir.1977); United States v. Martinez, 536 F.2d 1107, 1108 (5th Cir.1977), cert. den. 429 U.S. 985, 97 S.Ct. 505, 50 L.Ed.2d 597 (1976). See generally 8 Moore's Federal Practice § 11.08; McCormick on Evidence, § 265 (1972).
[4] We are not unmindful that dictum in several opinions of the United States Supreme Court, if read liberally and perhaps out of context, can be construed as supporting the proposition that any statement given as a result of promises by law enforcement officers is per se involuntary. See e.g., Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed 568 (1897). However, more recent decisions have criticized this broad interpretation. See, Brady v. United States, 397 U.S. 742, 754, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970).
[5] We are not persuaded by the Attorney General's argument that defendant's statement does not constitute a confession and, thus, State v. Hampton, supra, is inapplicable. Evid.R. 8(3), by its very wording, is not limited to confessions. See Evid.R. 63(7). See also State v. Kennedy, 135 N.J. Super. 513 (App.Div. 1975); "Supplemental Report of the New Jersey Supreme Court's Committee on Criminal Practice," 98 N.J.L.J. 435 (1975). In any event, our review of defendant's statement belies the claim that it does not constitute a confession.