534 A.2d 524

COMMONWEALTH of Pennsylvania

v.

Ruben MASCITTI, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 20, 1987.

Filed Dec. 2, 1987.

Michael D. Mason, Assistant Public Defender, Meadville, for appellant.

John M. Dawson, District Attorney, Meadville, for Com., appellee.

Before BECK, KELLY and HOFFMAN, JJ.

KELLY, Judge:

Appellant, Ruben Mascitti, appeals from judgment of sentence of ten to twenty years imprisonment imposed upon his conviction of involuntary deviate sexual intercourse, statutory rape, corruption of minors, and endangering welfare of children following a jury trial.

Appellant contends on appeal that: 1) the trial court erred in failing to quash the charges of corruption of minors and endangering the welfare of a child based upon the alleged expiration of the statute of limitations period for the offenses; 2) the trial court erred in *sua sponte* vacating appellant's negotiated *nolo contendere* plea; and 3) the trial court abused its discretion in denying appellant's trial counsel's motion for declaration of a mistrial and for permission to withdraw as counsel following an in-chambers hearing regarding counsel's belief that appellant intended to commit perjury. We find no merit in the contentions and accordingly affirm.

The details of this case may be briefly stated as follows. Appellant married the victim's mother in 1975, when the

victim was three years old. In November 1979, appellant began sexually abusing his then six-year-old step-daughter. The abuse occurred in the family home in Crawford County, Pennsylvania, and included acts of intercourse and oral sex.

In September 1982, appellant moved to Florida to seek employment. One month later, his wife and the child victim joined him in Florida. In December 1983, the child victim and her mother came to Pennsylvania intending to make a brief visit; however, the visit became an extended stay. In June 1984, the child victim revealed to her mother the facts regarding the repeated sexual abuse inflicted upon her by her stepfather. Charges were filed against appellant in July 1984, and appellant returned to the Commonwealth for arraignment in August 1984.

Appellant initially entered a plea of *nolo contendere* to the charges on January 15, 1985. Sentence was deferred until completion of a pre-sentence report. On February 5, 1985, following review of the pre-sentence report and examination of the appellant regarding assertions of innocence made by appellant to the probation officer, the trial court *sua sponte* vacated appellant's plea and scheduled the case for trial.

An in-chambers hearing was held prior to trial during which counsel for appellant informed the trial court that he had reason to believe that appellant intended to take the stand and commit perjury. The court then proceeded to question appellant. Apparently unsatisfied with appellant's responses, the court directed that counsel continue representation but that appellant would have to testify by narrative rather than direct examination if appellant chose to testify at trial. The trial court also admonished appellant regarding the consequences of committing perjury. Counsel's motions for declaration of a mistrial and for permission to withdraw as counsel were denied. Trial commenced, and appellant chose not to testify in his own defense. A verdict of guilty was returned. Post-verdict motions were denied. Sentence was imposed, and the instant timely appeal followed.

## I.

■ Appellant first contends that the trial court erred in failing to quash the charges of corruption of minors and endangering the welfare of children based upon the alleged expiration of the statute of limitations period. Appellant argues that although he was in fact continuously absent from the Commonwealth from September 1982 to July 1984, the running of the statute of limitations period was not tolled by operation of 42 Pa.C.S.A. § 5554(1), because appellant left the Commonwealth legitimately to seek new employment in Florida and not to escape prosecution, and at no time did he seek to hide his identity or whereabouts. (Appellant's Brief at 13). We cannot agree.

Appellant's argument assumes the existence of a *mens rea* or motivation exception or limitation to Section 5554(1) of the statute of limitations tolling statute, which we do not find in the plain language of the statute:

§ 5554. **Tolling of statute.**

Except as provided by section 5553(e) (relating to disposition of [summary] proceedings within two years), the period of limitation does not run during any time when:

(1) the accused is continuously absent from this Commonwealth or has no reasonably ascertainable place of abode or work within this Commonwealth; ....

Rather, the plain and unambiguous language of the statute provides that the statute of limitation period is tolled whenever an accused is continuously absent from the Commonwealth.

We have neither the authority nor the inclination to adopt the novel theory propounded by appellant. "Where as here, the words of the statute are clear, the letter thereof will not be disregarded under the pretext of pursuing an unstated legislative intent. 1 Pa.C.S.A. § 1921(b); *City of Pittsburgh v. Royston Service, Inc.*, 37 Pa.Cmwlth. 394, 390 A.2d 896 (1978)." *Commonwealth v. Duncan*, 279 Pa.Super. 395, 398, 421 A.2d 257, 259 (1980). Appellant's first contention is without merit.

## II.

■ Appellant's second contention is that the trial court erred in *sua sponte* vacating appellant's plea of *nolo contendere* based upon appellant's denial during an interview with a probation officer for the preparation of the pre-sentence report of sexual contact with the child victim, and appellant's election not to respond to the court's inquiry as to whether the denial had been made and whether there was in fact a factual basis for the plea. Appellant argues that regardless of what appellant said to the probation officer, the plea should not have been vacated because a plea of *nolo contendere* does not involve an admission of guilt even though the plea subjects the appellant to conviction and imposition of sentence as if a guilty plea had been entered. (Appellant's Brief at 15). We do not agree.

The entry and acceptance of plea agreements is governed by Pa.R.Crim.P. 319 which provides in pertinent part:

Rule 319. Pleas and Plea Agreements

b) Plea Agreements

(1) The trial judge shall not participate in plea negotiations preceding an agreement.

(2) When counsel for both sides have arrived at a plea agreement they shall state on the record in open court, in the presence of the defendant, the terms of the agreement. Thereupon *the judge shall conduct an inquiry of the defendant on the record to determine whether he understands and concurs in the agreement.*

(3) If the judge is satisfied that the plea is understandingly and voluntarily tendered, he may accept the plea. *If thereafter the judge decides not to concur in the plea agreement, he shall permit the defendant to withdraw his plea.*

(Emphasis added).

■ The decision of whether to accept or reject a plea agreement is within the sound discretion of the trial court.

*Commonwealth v. Wilson*, 234 Pa.Super. 7, 335 A.2d 777 (1975); Pa.R.Crim.P. 319(b)(3). The trial court concluded that the plea had been improvidently accepted and decided to vacate the plea agreement. We find no abuse of the trial court's sound discretion in this area. Appellant's second contention is, therefore, without merit.

## III.

Appellant's third and final contention is that the trial court erred in failing to grant trial counsel's motion for the declaration of a mistrial and for permission to withdraw as counsel. Appellant contends that the trial court's order denying counsel's motion for a mistrial effectively denied him his right to testify on his own behalf. He argues that: the order improperly bound him to his plea negotiation version of the facts; he did not indicate during the in-chambers hearing that he intended to commit perjury; as a result of the ruling at the hearing, he was uncertain as to what he could testify to without risking perjury charges; because trial commenced immediately after the hearing, he was unable to seek effective assistance of counsel regarding whether he should testify; trial strategy was hindered by the uncertainty as to whether appellant would testify; and, the admissions disclosed during plea negotiations should not have been used against appellant as the basis for the order imposed. (Appellant's Brief at 18–23). We find no merit in appellant's arguments in support of this contention.

## A.

After a jury was selected, but prior to opening argument, appellant's trial counsel requested an in-chambers hearing with the judge, appellant, co-counsel, and both counsel for the Commonwealth. At this hearing, counsel for appellant disclosed that appellant had informed him that he intended to take the stand and deny all sexual contact with the child victim (just as he had done earlier when interviewed by the probation officer drafting the pre-sentence report). How-

ever, during plea negotiations appellant had authorized counsel to reveal to the Commonwealth confidential admissions made by appellant which were in direct conflict with a claim of complete innocence. (N.T. 3/12/85 at 3–7). Counsel concluded that appellant's proposed testimony was, therefore, perjurious. Appellant did not deny making the statements to counsel indicating that some sexual contact had occurred, nor did he deny telling counsel he intended to take the stand and deny all sexual contact. Following an extended discussion with appellant regarding his proposed testimony, the trial court concluded as follows:

> All right. We've got to go forward with this matter in some manner. So here's what we're going to do. I'm going to try to protect Mr. Truax. I'm going to protect your rights as much as possible. But we're in somewhat of a bind under the circumstances. *I don't know what you're going to testify to. You have told me today that you did tell and that it, in fact, was true that you had sexual contact, including probably an admission of the statutory rape charge, although denying the deviate intercourse.*
>
> Now we'll go ahead with this trial. I'm not going to require Mr. Truax to call you as a witness *since he can't be sure whether you're going to testify until you've testified whether you're going to testify truthfully or not under the circumstances.* I will permit you to testify. And it's entirely up to you what you want to testify to, I suppose, although I don't recommend perjury. And I'm sure that the District Attorney, if he feels that you have perjured yourself, will charge you with that and you'll have those additional charges to face.
>
> *But in order to protect Mr. Truax, if you decide to testify, you will testify in a narrative form.* In other words, he can just say, 'You tell your story,' and you can tell it. And if you tell a story which is untruthful when compared with what you have said here today, I will not permit Mr. Truax to argue that version to the jury.

I know that somewhat ties his hands as counsel. But on the other hand, I don't think that I can let him argue something that you have admitted isn't true if you so testify. *If you want to take the stand and tell the truth, he can argue anything he wants to from your testimony. The truth as it has been developed here. I'm accepting this as the true version.*

(N.T. 3/12/85 at 12–13). (Emphasis added).

Counsel for appellant then made the following motion:

MR. THOMAS: I would on behalf of Mr. Truax, I would ask the Court to consider that the jury has been sworn in this case and to declare a mistrial and relieve Mr. Truax as counsel for the defendant in view of the testimony that has developed in this hearing.

THE COURT: I'm going to deny that request because we don't know what Mr. Mascitti is going to do when he takes the stand at this point or whether he's going to take the stand. I'm just cautioning him on what's going to happen if he does, and depending on the way he testifies. The jury has not yet been sworn and I suppose we could dismiss them. But I'm not going to do that. The victim in this case has gone through preparing herself I suppose to some degree psychologically to testify at least on two occasions. And I think it would be grossly unfair to her to do anything else. I think I'm adequately protecting Mr. Truax, and certainly, if the Disciplinary Board goes after him, I'll go to bat on his behalf because I think he has acted totally properly in this matter.

(N.T. 3/12/85 at 14–15). It is the denial of this motion which forms the basis for appellant's third contention on appeal.

### B.

Appellant's assertion that the trial court bound appellant to his plea negotiation version of the facts is clearly not supported by the record. The trial court indicated that despite minor discrepancies between appellant's plea negotiation and in-chambers hearing versions of the facts, the

court was prepared to permit appellant's in-chambers hearing version to be presented to the jury and to permit counsel to use such evidence in closing argument.

The order requiring appellant to testify by narrative and the admonishment by the court regarding potential perjury charges was based on the court's conclusion that despite appellant's in-chambers hearing testimony, neither counsel nor the court could be certain of what appellant would say if he took the stand. Despite appellant's qualified admissions during plea negotiations and also at the in-chambers hearing to sexual contact with the victim, appellant had denied all sexual contact to the probation officer drafting the pre-sentence report and had informed counsel prior to trial that he would deny all sexual contact when he testified. The court quite reasonably concluded that it would not know what version of the facts appellant would testify to until appellant testified.

Under Pennsylvania law, "in all criminal prosecutions for criminal offenses a man hath a right to be heard by himself and counsel." Pa.Const. Art. I, sec. 9; *Commonwealth v. Osborn*, 364 Pa.Super. 505, 510 n. 1, 528 A.2d 623, 625 n. 1 (1987). Undeniably, an accused has a constitutional right to effective representation by learned counsel who knows and will protect the accused's rights zealously; however, our system also requires that lawyers act ethically, within the bounds of the law, so that they may be perceived as officers of the court who are committed to the proper administration of justice, and not as subverters of justice. *See Commonwealth v. Stenhach*, 356 Pa.Super. 5, 13, 514 A.2d 114, 118 (1986). It is axiomatic that the right to effective counsel does not include the right to compel counsel to knowingly assist or participate in the commission of perjury or the creation of false evidence. *Commonwealth v. Alderman*, 292 Pa.Super. 263, 269, 437 A.2d 36, 39 (1981); *accord Nix v. Whiteside*, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986).

The dilemma created by an appellant who informs counsel of his intent to present perjurious testimony has engen-

dered active debate in the legal profession. We limit our review, however, to the narrow issue presented instantly—whether the trial court abused its discretion in directing appellant to testify (if at all) by the narrative approach rather than declaring a mistrial, permitting counsel to withdraw, and appointing new counsel.[1] The narrative approach utilized by the trial court in this case has been used with approval in the courts of our sister states. *See State v. Fosnight*, 235 Kan. 52, 679 P.2d 174 (1984); *People v. Salquerro*, 107 Misc.2d 155, 433 N.Y.S.2d 711 (1980); *People v. Lowery*, 52 Ill.App.3d 44, 366 N.E.2d 155 (1977). We find no abuse of discretion in the trial court's decision to direct that the narrative approach be followed in the instant case.

We note that declaring a mistrial, permitting withdrawal of counsel and providing appointment of new counsel in the instant case could not resolve the ethical dilemma created by appellant's erratic, pendulum shifts between qualified admissions of guilt and outright denials of all sexual contact with the child victim. Consequently, grant of the motion for withdrawal of counsel and declaration of a mistrial would merely have shifted the dilemma from present counsel to new counsel, and would have unduly prolonged the adjudication process and its deleterious effects on the child victim. *See generally* Meyers, *The Legal Response to Child Abuse*, 24 Fam.L.J. 149, 182–84 & nn. 109–112 (1986) (discussing the need to minimize the trauma caused by the drawn out criminal adjudication process); Arther, *Child Sexual Abuse*, Vol. 37, No. 2, Juv. & Fam. Ct.J. 1, 30–31 (1986) (same). The trial court quite properly rejected this approach.

**1.** We note that appellant has not challenged, the record does not disclose, and we do not consider the adequacy of the steps counsel took prior to bringing the perjury issue to the attention of the court. We note that in *Nix v. Whiteside, supra,* the United States Supreme Court stated that it is universally accepted that before taking any other action, counsel should attempt to dissuade the client from the unlawful course of conduct. 475 U.S. at 169, 106 S.Ct. at 996, 89 L.Ed.2d at 136. The transcript of the in-chambers hearing does refer to a limited waiver of confidentiality in connection with the in-chambers hearing, but provides no details regarding the waiver. (N.T. 3/12/85 at 3).

## C.

Appellant argues that as a result of the ruling: he was uncertain as to what he could testify to without risking perjury charges; he was unable to seek guidance from counsel; and counsel's strategy was hindered by the uncertainty as to whether he would testify. These arguments are of dubious relevance to the issue of whether the motions for mistrial and withdrawal of counsel were properly denied; they are, in any event, without any merit.

The following excerpts from the hearing transcript are demonstrative of the clarity of the trial court's ruling:

If you want to take the stand and admit that you had sexual contact and explain whatever mitigating circumstances you feel existed you may do that.

\*     \*     \*     \*     \*     \*

I don't know what you are going to testify to. You have told me today that you did tell it and that it, in fact, was true that you had sexual contact, including probably an admission of the statutory rape charge, although denying the deviate intercourse.

\*     \*     \*     \*     \*     \*

I will permit you to testify. And it's entirely up to you what you want to testify to, I suppose, although I don't recommend perjury. And I'm sure that the District Attorney, if he feels that you have perjured yourself, will charge you with that. . . .

\*     \*     \*     \*     \*     \*

If you want to take the stand and tell the truth, [counsel] can argue anything he wants from your testimony. The truth as it has been developed here. I'm accepting this as the true version.

(N.T. 3/12/85 at 9, 12–13). We note that appellant did not express any of his alleged uncertainties on the record during the hearing. Similarly, there is no indication appellant expressed his alleged uncertainties to counsel.

It is the accused's decision whether to testify or to remain silent. *Commonwealth v. Fitzhugh*, 360 Pa.Super. 217, 227

n. 4, 520 A.2d 424, 431 n. 4 (1987). In making this decision, an accused cannot reasonably expect counsel to anticipate every desire, question, or misapprehension of fact which might linger unexpressed in his client's mind; we will not find counsel ineffective for failing to answer questions which were never asked. *Cf. Commonwealth v. Johnson,* 355 Pa.Super. 123, 136, 512 A.2d 1242, 1249 (1986). This is not a case where an accused's questions went unanswered, or where a necessary continuance for consultation regarding unforeseen developments was denied. Any doubt or uncertainty experienced by appellant was the result of his failure to present his questions to the court or to counsel, and not the result of the trial court's order.

We reject utterly any notion that the trial court's order created uncertainty as to whether appellant would testify. To the contrary, the trial court merely presented appellant with clear options and the consequences attendant thereto. Any uncertainty as to whether appellant would testify was solely the product of indecision and vacillation by appellant, not the order of the trial court. Moreover, we note that appellant has not indicated any specific manner in which trial tactics were hindered. *Cf. Commonwealth v. Duffy,* 355 Pa.Super. 145, 156, 512 A.2d 1253, 1258–59 (1986) (we reject appellant's cryptic allegation of "tactical disadvantage.").

### D.

Finally, appellant argues that the admissions which appellant consented to disclose to the Commonwealth during plea negotiations should not have been permitted to be used against him after the plea agreement had been rejected by the trial court. *Dictum* in previous decisions of this Court indicate that admissions made during the course of plea bargaining are not admissible against the accused at a later trial as evidence of guilt if no bargain is struck or if the bargain is rejected by the trial judge. *See Commonwealth v. Wolf,* 353 Pa.Super. 483, 510 A.2d 764 (1986); *Commonwealth v. Calloway,* 313 Pa.Super. 173, 459 A.2d

795 (1983); *Commonwealth v. Cohen,* 133 Pa.Super. 437, 2 A.2d 560 (1938).

In *Commonwealth v. Calloway, supra,* this Court explained its approval of the prohibition based upon the public policy of encouraging plea bargaining. This Court noted, however, that the rule was limited to cases where the accused made the statement under an actual and reasonable expectation to negotiate a plea at the time of the discussion. In both *Commonwealth v. Calloway, supra,* and *Commonwealth v. Wolf, supra,* this limitation was found not to have been met.

Appellant's argument does not require this Court to pass upon the *dictum* in *Cohen, Calloway,* and *Wolf.*[2] In the instant case, the admission was considered solely for the purpose of determining the validity of counsel's assertion that withdrawal was necessary because his client intended to commit perjury. Whether or not appellant's admission was admissible at trial as evidence of appellant's guilt, or subsequently in a potential perjury trial,[3] we find that neither the rule, nor the public policy which the rule is presumed to advance, warrant expansion of the rule to apply to the instant case.[4] Succinctly, the public's arguable

---

**2.** *Commonwealth v. Cohen, supra,* was decided upon other grounds; the discussion of the rule was purely *dictum. See Commonwealth v. Calloway, supra,* 459 A.2d at 799. In both *Commonwealth v. Calloway* and *Commonwealth v. Wolf,* this Court found that the admissions at issue were not, in fact, made under the actual and reasonable expectation that a plea was being negotiated. Thus, the cases constitute persuasive rather than binding precedential authority in Pennsylvania. The rule and its application continues to engender active debate. *See State v. Boyle,* 198 N.J.Super. 64, 486 A.2d 852 (1984) (declining to adopt the rule, discussing its limitations, and collecting cases).

**3.** We note that it is one thing to authorize the disclosure and consideration of confidences and/or admissions made during plea negotiations to prevent counsel, as an individual and as an officer of the court, from being compelled to foster an accused's perjurious designs; it, of course, would be quite another to permit the confidences or plea negotiation admissions to be introduced as evidence of appellant's guilt at trial or in a subsequent perjury trial. The latter situations are not presented in this appeal, and therefore, need not be considered.

**4.** The rule itself is limited and subject to exceptions. *See e.g. State v. Hansen,* 633 P.2d 1202 (Mont.1981) (cross-examination regarding plea bargain admission of having intercourse with victim without victim's

interest in promoting plea negotiations is not of sufficient magnitude to warrant suppression of the statements made during plea negotiations when the result of suppression would be to compel an attorney to be an unwilling partici- pant in an accused's perjurious designs. Thus, even if we were to assume, *arguendo*, that appellant's argument was relevant to the issue of whether the trial court abused its discretion in failing to grant counsel's motion for a mistrial and to permit withdrawal as appellant's counsel, we would find the argument to be without merit. Each of appellant's arguments have been rejected; the third and final conten- tion on appeal is found to be without merit.

## CONCLUSION

Based upon the foregoing, judgment of sentence is af- firmed.

HOFFMAN, J., files concurring and dissenting opinion.

HOFFMAN, Judge, concurring and dissenting:

I concur in the majority's finding that the lower court properly denied appellant's motion to quash. I dissent, however, from the determination that the lower court prop- erly vacated, *sua sponte*, appellant's plea of *nolo conten- dere*. Accordingly, I would reverse the judgment of sen- tence, and remand the case to the trial court for reinstate- ment of appellant's *nolo contendere* plea and resentencing. Because I would order the lower court to reinstate the plea, I would find it unnecessary to address appellant's final contention.

Appellant contends that the lower court erred in vacating his previously-accepted plea of *nolo contendere* because it based its order on appellant's failure to admit his involve- ment in the offense. He argues that even though a plea of

consent was properly permitted after accused took stand and denied that any non-consensual intercourse occurred); *People v. Jackson,* 24 Ill.App.3d 700, 321 N.E.2d 420 (1974) (accused was properly cross-ex- amined regarding plea bargain admissions after accused asserted on direct examination that he was offered a plea bargain but rejected it); *see also State v. Boyle, supra* at note 2.

*nolo contendere* subjects him to sentencing *as if* he pleaded guilty, such a plea "does not require an admission of guilt by the defendant." For the reasons that follow, I agree and would find that the lower court erred in imposing a requirement that an appellant must admit to the existence of a factual basis for the crimes charged to be entitled to preserve a plea of *nolo contendere*. Accordingly, I would hold that the lower court abused its discretion in vacating the plea.

On January 15, 1985, appellant appeared before the Honorable P. Richard Thomas, President Judge of the Court of Common Pleas of Crawford County. Pursuant to a plea arrangement, appellant entered a plea of *nolo contendere* to charges of statutory rape and corruption of minors. When asked by the court whether he knew what a plea of *nolo contendere* meant, appellant replied: "It means that I am not admitting the charges, but I don't have a defense against them." N.T. January 15, 1985 at 9. Appellant's plea was accepted, and sentencing was deferred pending completion of a pre-sentence report.

On February 5, 1985, appellant appeared before the Honorable Robert L. Walker for sentencing. After reviewing the pre-sentence report and questioning appellant, the sentencing court determined that appellant's plea had been improvidently accepted by President Judge Thomas. The court then issued an order, *sua sponte*, striking the *nolo contendere* plea and scheduling the case for trial.

In its opinion, the sentencing court made plain that the only reason it vacated the *nolo contendere* plea was because appellant refused to admit to a factual basis for the crimes charged. The court noted that, "a review of the pre-sentence investigation indicated that defendant had told the investigator that he had had no sexual contact whatever with the victim." Lower Court Opinion at 2. The court reasoned that this denial disentitled appellant to the benefit of the plea:

We were quite frankly reluctant to sentence someone to prison who denied any involvement with the crime....

Since the defendant refused to either admit or deny his involvement in the offense which he was free to do, we vacated his plea, refused to impose sentence and permitted him to stand trial.

... [W]e still feel a great reluctance to sentence a defendant who flat out denies his involvement.

*Id.* In requiring that appellant admit to a factual basis, the sentencing court treated the *nolo contendere* plea as if it were equivalent to a guilty plea.

The majority, without discussion, holds that the sentencing court did not abuse its discretion in vacating the plea agreement. The majority thus implicitly approves of the court's determination that a defendant must admit to a factual basis for the crime charged in order to preserve a *nolo contendere* plea. I disagree with the conclusion that the court can require a defendant to provide such a factual basis.

A plea of *nolo contendere* is one "by which a defendant does not expressly admit his guilt, but nonetheless waives his right to a trial and authorizes the court for purposes of the case to treat him as if he were guilty." *North Carolina v. Alford,* 400 U.S. 25, 35, 91 S.Ct. 160, 166, 27 L.Ed.2d 162 (1970) (footnote omitted); *Commonwealth v. Boyd,* 221 Pa.Superior Ct. 371, 373–74, 292 A.2d 434, 435 (1972) (quoting *Hudson v. United States,* 272 U.S. 451, 47 S.Ct. 127, 71 L.Ed. 347 (1926)). *See also* 2 W. LaFave & J. Israel, *Criminal Procedure* § 20.4, at 636 (1984) (plea LaFave & J. Israel, *Criminal Procedure* § 20.4, at 636 (1984) (plea of *nolo contendere* is device by which defendant may assert that he or she does not want to contest issue of guilt or innocence). "Throughout its history, that is, the plea of *nolo contendere* has been viewed not as an express admission of guilt but as a consent by the defendant that he may be punished as if he were guilty and a prayer for leniency." *North Carolina v. Alford, supra* at 35 n. 8, 91 S.Ct. at 166 n. 8. *See also Commonwealth ex rel. Warner v. Warner,* 156 Pa.Superior Ct. 465, 466, 40 A.2d 886, 887 (1945) (plea of *nolo contendere* is *implied* confession of

guilt only). Such a plea may not be entered as a matter of right; the plea "must be accepted and approved by the trial judge." *Commonwealth v. Boyd, supra*, 221 Pa.Superior Ct. at 373, 292 A.2d at 435. *See also* Pa.R.Crim.P. 319.

Once the plea has been accepted by the trial judge, "it is not the province of the court to occupy itself with the question of guilt or innocence." *Commonwealth v. Boyd, supra*, 221 Pa.Superior.Ct. at 374, 292 A.2d at 435. The *effect* of such a plea upon the case, however, is equivalent to that of a guilty plea. *Id. See also* 2 W. LaFave & J. Israel, *supra* § 20.4, at 637. Thus, "[c]onviction and sentence [may] follow upon it in the same manner as upon a plea of guilty...." *Commonwealth v. Smith*, 151 Pa.Superior Ct. 113, 130, 30 A.2d 339, 346 (1942). Moreover, "[t]he procedures for receiving the plea are the same, the defendant may receive the same sentence, and the nolo plea is like a guilty plea in terms of its finality, its effect as a waiver of claims unrelated to the plea, and the circumstances in which withdrawal of the plea would be permitted." 2 W. LaFave & J. Israel, *supra* (footnotes omitted).

Here, appellant entered a plea of *nolo contendere*. The colloquy between President Judge Thomas and appellant demonstrates that appellant understood precisely the nature of this plea. The court then accepted the plea. Under Pennsylvania law, the plea operated as an *implied* admission of guilt, *see, e.g., Commonwealth ex rel. Warner v. Warner, supra*, and thus subjected appellant to conviction and sentence. *Commonwealth v. Smith, supra.* Unlike a guilty plea, however, once appellant's plea was accepted, the lower court could not inquire further regarding whether a factual basis existed for the plea. *Commonwealth v. Boyd, supra.* Accordingly, I would hold that the lower court abused its discretion in vacating the plea simply because appellant refused to admit his guilt both in the pre-sentence report and in open court.

Moreover, I note that even if Pennsylvania law permitted the court to seek to establish a factual basis for a plea of *nolo contendere*, I would hold that the court erred in

requiring the defendant himself to establish the basis by direct admission. As LaFave and Israel have noted, even in those jurisdictions that require that a factual basis be established, "the factual basis must be established other than by direct inquiry of the defendant." 2 W. LaFave & J. Israel, *supra* § 20.4, at 637 n. 9. *See also North Carolina v. Alford, supra* at 35 n. 8, 91 S.Ct. at 166 n. 8 (under federal rules, requirement that factual basis exist applies only to guilty pleas; "it was thought desirable to permit defendants to plead *nolo* without making any inquiry into their actual guilt"). The rationale for the distinction is obvious: if a defendant were required to admit guilt directly, it "would nullify the benefit of the nolo plea." 2 W. LaFave & J. Israel, *supra.*

For the foregoing reasons, I would reverse the judgment of sentence, and remand the case to the trial court for reinstatement of appellant's *nolo contendere* plea and resentencing.