287 N.J. Super. 478 (1996)
671 A.2d 586
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LOUIS JONES, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 8, 1995.
Decided February 16, 1996.
*483 Before Judges PRESSLER, KEEFE and WEFING.
Michael B. Jones, Assistant Deputy Public Defender, argued the cause for appellant (Susan L. Reisner, Public Defender, attorney).
Simon Louis Rosenbach, Assistant Prosecutor, argued the cause for respondent (Robert W. Gluck, Middlesex County Prosecutor, attorney).
The opinion of the court was delivered by KEEFE, J.A.D.
The principal issue to be decided on this appeal is whether defendant's state prosecution for third degree possession of cocaine and first degree possession of cocaine with intent to distribute should have been barred under N.J.S.A. 2C:1-11 because of his previous federal conviction in North Carolina for conspiracy to distribute cocaine, and for violating the Travel Act. If defendant's New Jersey prosecution is not barred, we are asked to decide whether the trial judge erred in denying defendant's motion to *484 suppress evidence and subsequently erred in failing to instruct the jury in accord with State v. Hampton, 61 N.J. 250, 294 A.2d 23 (1972). We conclude herein that the state prosecution was not barred and that probable cause existed to justify the search in question. However, we hold that the judge's failure to instruct the jury in accordance with State v. Hampton, constituted plain error and requires a new trial. In light of our remand for a new trial the other issues raised by defendant have been rendered moot.
On April 7, 1989, defendant was stopped for speeding on the New Jersey Turnpike. Defendant's vehicle bore North Carolina license plates. As defendant was pulling over, the trooper observed certain activity by defendant which led the trooper to conclude that defendant was attempting to conceal something or attempting to retrieve a weapon. Upon approaching the vehicle the trooper noticed a black, Christian Brothers brandy canister between defendant's legs and the driver's seat. Defendant was unable to produce a driver's license but a registration was eventually located. Because of the driver's prior movements in the car, the trooper was concerned for his safety and ordered defendant to exit the vehicle, whereupon he was patted down for weapons. No weapons were discovered. However, the trooper observed that defendant's eyes were bloodshot, he was nervous, and his eyes were dilated.
Defendant told the trooper that he had driven either from Jersey City or Newark prior to being stopped.[1] However, a female passenger in the vehicle said they had been in New York City and produced a New Jersey Turnpike toll ticket indicating that the vehicle entered at Exit 18, the George Washington Bridge.
*485 In light of defendant's actions, his appearance, and the brandy canister observed between his legs before he exited the vehicle, the trooper inquired of defendant whether he had been drinking. Defendant denied the existence and knowledge of the canister, where it came from and its contents. After this response, the trooper opened the canister and found three, clear plastic bags which contained a white substance. The substance later tested positive for cocaine and weighed ten ounces.
Defendant and his passenger were arrested, administered their rights, and taken to the New Brunswick police station where the vehicle was searched. The search revealed a white bag containing narcotics paraphernalia, a sifter, a strainer, a butane fuel lighter, a bowl used for smoking cocaine, and a cutting agent.
At the police station after defendant had been given his Miranda rights, defendant admitted that he knew of the cocaine in the car, and that he was attempting to hide it when they were being stopped by the trooper. He also admitted that the cocaine had been placed in the metal brandy container. Further, defendant stated that he and his passenger had gone to Brooklyn, New York, for the purpose of picking up the narcotics and that "he liked to smoke, the powder [cocaine]."
Defendant's motion to suppress the evidence seized through the warrantless search of his vehicle was denied and the matter proceeded to trial. At trial, an investigator from the Middlesex County Prosecutor's office testified as an expert on the use, packaging, manufacture, and distribution of narcotics. He concluded that the drugs were to be ingested because of the paraphernalia in the car, but, based on the amount of the cocaine found, he opined that it was also to be transported and redistributed. The investigator also opined that defendant and his passenger were "mules," a slang expression for people who are hired to transport drugs and are paid either in cash or in kind when the product is delivered.
A jury found defendant guilty on both counts of the indictment, third degree possession of cocaine (count one), contrary to *486 N.J.S.A. 2C:35-10a(1), and first degree possession of cocaine with intent to distribute (count two), contrary to N.J.S.A. 2C:35-5a(1) and b(1). The State's motion for extended term sentencing was granted. Defendant was then sentenced to a five year prison term with a two and one-half year parole disqualifier on count one. On count two, defendant received an extended term of twenty-five years, other fines and penalties, and a $150 SNSF fee which the State now concedes was inappropriately levied against him.
Subsequently, the trial court resentenced defendant and imposed an eight and one-third year parole ineligibility period on count two because the court had neglected to do so at the first sentencing. The parole ineligibility was imposed because the second count was a first degree crime with an extended term.

I
On December 26, 1989, six months after he was indicted in New Jersey, a federal grand jury in the Middle District of North Carolina indicted defendant and six others for conspiracy to distribute cocaine in violation of 21 U.S.C.A. §§ 846, 841(b)(1)(B) (count one), and for violating the Travel Act, 18 U.S.C.A. § 1952 (count five). He was found guilty on those charges and was sentenced on September 18, 1991, two years before his trial on the state indictment. The sentence imposed was five years imprisonment with a five year supervised release condition to follow.
Defendant asserts that his New Jersey convictions for third degree possession of cocaine and first degree possession of cocaine with intent to distribute are barred by the provisions of N.J.S.A. 2C:1-11 because of his federal court convictions for conspiracy to distribute cocaine and violation of the Travel Act.
N.J.S.A. 2C:1-11 provides in pertinent part:
when conduct constitutes an offense within the concurrent jurisdiction of this State and of the United States, a prosecution in the District Court of the United States is a bar to a subsequent prosecution in this State under the following circumstances:
a. The first prosecution resulted in an acquittal or conviction, ..., and the subsequent conviction is based on the same conduct, unless (1) the offense of which *487 the defendant was formerly convicted or acquitted and the offense for which he is subsequently prosecuted each requires proof of a fact not required by the other and the law defining each of such offenses is intended to prevent a substantially different harm or evil or (2) the offense for which the defendant is subsequently prosecuted is intended to prevent a substantially more serious harm or evil than the offense of which he was formerly convicted or acquitted or (3) the second offense was not consummated when the former trial began[.]
[N.J.S.A. 2C:1-11.]
New Jersey courts have strictly interpreted N.J.S.A. 2C:1-11, and in almost all of the cases that have dealt with statutory double jeopardy, the federal prosecution has not been a bar to a subsequent state prosecution. Cannel, New Jersey Criminal Code Annotated, comment 3 on N.J.S.A. 2C:1-11.
The initial inquiry to determine whether a bar exists is whether the two prosecutions are based on the "same conduct." State v. Di Ventura, 187 N.J. Super. 165, 172-173, 453 A.2d 1354 (App.Div. 1982), certif. denied, 93 N.J. 261, 460 A.2d 666 (1983). The definition of "same conduct" has been strictly construed to mean "identical conduct." Id. at 172, 453 A.2d 1354. That is to say, "[o]verlapping conduct is not identical." State v. Ashrue, 253 N.J. Super. 181, 184, 601 A.2d 265 (Law Div. 1991). For example, in State v. Buhl, 269 N.J. Super. 344, 367-370, 635 A.2d 562 (App.Div.), certif. denied, 135 N.J. 468, 640 A.2d 850 (1994), we held that a state kidnapping charge was not barred by a federal kidnapping charge for the same incident because the state statute focuses on asportation or restraint of the victim which presents an enhanced risk of harm, while the federal statute requires the willful transport of a victim in interstate commerce, or across state lines. Id. at 369, 635 A.2d 562. The Buhl court reasoned that because the statute proscribed different conduct, the conduct which was the subject of the separate prosecutions was not the same. Ibid. We also held that not only did the two prosecutions involve different conduct, but also that each statute "required proof of a fact not required by the other and the law defining each of the offenses was intended to prevent a substantially different harm or evil." Id. at 369-371, 635 A.2d 562.
*488 Likewise, in State v. Di Ventura, this court held that N.J.S.A. 2C:1-11 was not a bar to a subsequent state prosecution for arson where the federal prosecution was for mail fraud to obtain insurance proceeds by committing arson. State v. Di Ventura, supra, 187 N.J. Super. at 170, 453 A.2d 1354. The state indictment in that case charged "defendant with conspiracy to commit arson, solicitation of arson and arson of his restaurant." Id. at 173, 453 A.2d 1354. While the court conceded that both indictments concerned the arson of the restaurant in order to collect insurance proceeds, it found that the federal indictment focused upon mail fraud whereby defendant was mailing false claims to the insurance company and receiving payment. Ibid. The court concluded that the state prosecution manifestly fell within the first and second exceptions to N.J.S.A. 2C:1-11 and that the conduct proscribed by each indictment was not the same. Id. at 170-173, 453 A.2d 1354.
Defendant argues here that N.J.S.A. 2C:35-5a formed a part of the conduct for which he was prosecuted in the federal court under the Travel Act count and the conspiracy count. Specifically, defendant asserts that the New Jersey possession was alleged in the federal Travel Act indictment, and that proof of possession of cocaine on the New Jersey Turnpike was a necessary element of the federal case. Secondly, defendant maintains that the same proofs form the basis of defendant's overt acts in the federal conspiracy charge.
We deal first with the Travel Act under which defendant was convicted in federal court. It provides in relevant part:
(a) Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to ... (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity ...
[18 U.S.C.A. § 1952(a)(3).]
The Travel Act count of the indictment read as follows:
On or about April 6, 1989, Louis Jones did travel in interstate commerce from Winston Salem in the State and Middle District of North Carolina to New York City in the State of New York, with the intent to promote, manage, establish carry on or facilitate the promotion, management, establishment or carrying on of an *489 unlawful activity, said unlawful activity being a business enterprise involving controlled substance in violation of the laws of the United States, Title 21, United States Code Sections 846 and 841(a)(1), and thereafter did perform and attempt to perform acts to promote, manage, establish, carry on or facilitate the promotion, management, establishment or carrying on of said unlawful activity in violation of Title 18, United States Code Section 1952(a)(3).
The heart of the federal prosecution is the traveling in interstate commerce to promote the goals of an illegal activity, the drug conspiracy. United States v. Fetlow, 21 F.3d 243, 247 (8th Cir.), cert. denied, ___ U.S. ___, 115 S.Ct. 456, 130 L.Ed.2d 365 (1994). The aim of the Travel Act is to prevent criminal activity from being conducted between the states. United States v. Johnson, 961 F.2d 1488, 1491 (10th Cir.1992). A defendant cannot violate the statute without travelling in interstate commerce. Ibid. Thus, travel is an essential element of the offense and is not merely jurisdictional. Travel however, is not an element of the State offenses of possession or possession with intent to distribute, nor is possession an element of a Travel Act prosecution.
The elements of proof required for the Travel Act prosecution are significantly different from the proofs required for the state prosecution. The federal trial judge instructed the jury as to the four essential elements required to prove a violation of the Travel Act as follows:
First, that the defendant traveled from one state to another; second, that the defendant did such travel with the specific intent to promote, manage, establish or carry on the activity described in the indictment; three that the activity described in the indictment was illegal under the laws of the United States; and four, after the interstate travel, the defendant knowingly and deliberately did act or attempted to do an act in order to promote manage, establish or carry on the activity described in the indictment.
In contrast, the focus of N.J.S.A. 2C:35-5a is entirely different. The conduct to be proved is possession of drugs with the intent to distribute them. See State v. Florez, 134 N.J. 570, 636 A.2d 1040 (1994) (quantity of drugs is a material element). To prove the federal offense, possession of the drugs was not required since defendant violated the Travel Act once he entered New York to carry out the unlawful activity and then took steps to do so. See United States v. Loucas, 629 F.2d 989, 991 (4th Cir.1980), cert. *490 denied, 450 U.S. 1030, 101 S.Ct. 1738, 68 L.Ed.2d 224 (1981) (state substantive offense is not a prerequisite to a Travel Act conviction); United States v. Pomponio, 511 F.2d 953, 957 (4th Cir.), cert. denied, 423 U.S. 874, 96 S.Ct. 142, 46 L.Ed.2d 105 (1975) ("The `unlawful activity' specified in the [Travel] Act may be [an offense] under state or federal law and reference to such law is necessary only to identify the type of `unlawful' activity in which the defendants intended to engage. Proof that the unlawful objective was accomplished or that the referenced law has actually been violated is not a necessary element of the offense defined in Section 1952.").
The New Jersey possession was merely part of the evidence, of the intent element of the Travel Act violation. Thus, defendant could have been prosecuted under the Travel Act without evidence of the New Jersey stop. Simply stated, the federal and state prosecutions do not require proof of identical conduct. Defendant did not have to possess the cocaine and intend to distribute it in order to violate the Travel Act, but proof of travel was required. On the other hand, the possession of the cocaine was the sine qua non of the state offenses while proof of travel was irrelevant to the prosecution.
This case is similar to State v. Cooper, 211 N.J. Super. 1, 510 A.2d 681 (App.Div. 1986), where a federal RICO charge had included the state robbery as a predicate act. In that case, the federal prosecution was not a bar to the state robbery prosecution because proof of the particular robbery was not needed to prove the federal case. Id. at 17, 510 A.2d 681. Here the Travel Act prosecution required proof of the greater scheme and not necessarily proof of possession in New Jersey. Thus, the state prosecution was not barred by reason of the federal prosecution for violation of the Travel Act.
We now address the conspiracy count and conclude that the federal conspiracy charge does not trigger N.J.S.A. 2C:1-11 to bar the prosecution of N.J.S.A. 2C:35-5a. State v. Sessoms, 187 N.J. Super. 625, 455 A.2d 595 (Law Div. 1982) (N.J.S.A. 2C:1-11 did *491 not bar the state prosecution on the substantive, underlying offense of the conspiracy (theft) because those offenses are separate and distinct offenses. However, the statute did bar prosecution on the state conspiracy charge after defendant pled guilty to a federal charge of conspiracy.) An examination of the respective statutes underscores our conclusion.
The elements required to be proved, i.e., the conduct that comprises the offenses, are not identical. N.J.S.A. 2C:1-11(a)(1). In a prosecution under the federal conspiracy statute, the government must prove that two or more persons agreed to distribute illegal drugs, that the defendant was a member and knew of the conspiracy, and each intended to be a part of the conspiracy. United States v. Stone, 960 F.2d 426, 430 (5th Cir.1992). A person can be convicted of conspiracy even if he or she never personally intended to distribute the illegal drugs, United States v. Young, 954 F.2d 614, 618 (10th Cir.1992), and even if the government fails to prove that the substances were in fact illicit drugs. United States v. Sweeney, 688 F.2d 1131, 1145 (7th Cir.1982). Further, an overt act does not have to be proved for a federal conspiracy conviction. United States v. Sassi, 966 F.2d 283, 284 (7th Cir.), cert. denied, 506 U.S. 991, 113 S.Ct. 509, 121 L.Ed.2d 444 (1992); United States v. Bey, 736 F.2d 891, 893-95 (3rd Cir.1984). Our examination of the federal trial judge's instruction to the jury in this case reveals that he did not instruct the jury that proof of an overt act was necessary to convict defendant on the conspiracy count.
On the other hand, a defendant violates N.J.S.A. 2C:35-5 when he or she actually or constructively possesses the illegal drug. While a person can be convicted of the federal conspiracy statute without ever touching or having control of the drug, a defendant charged under N.J.S.A. 2C:35-5a cannot be convicted unless he or she actually or constructively possessed the drug in order to distribute it. State v. Florez, supra, 134 N.J. at 570, 636 A.2d 1040.
*492 Defendant argues that N.J.S.A. 2C:1-11a should bar his state prosecution because the Travel Act prosecution was based almost entirely on the evidence of the New Jersey possession. The argument centers on whether a substantive state prosecution can be barred if the facts necessary to establish it had been used to convict a defendant at the former, federal prosecution. The case law has not considered whether a bar will exist in this situation, that is, where the state offense and the federal offense require proof of different elements, but the state offense was used as part of the proof of the prior federal prosecution.
However, the essential test is whether the criminal conduct necessary to satisfy both statutes is identical, not whether defendant's actual conduct in committing the crimes was identical. See Buhl, supra, 269 N.J. Super. at 367-370, 635 A.2d 562 (federal kidnapping prosecution did not bar state kidnapping prosecution, although physical act of kidnapping was the same, because the underlying elements to be proved were not identical). More importantly, the New Jersey conduct did not constitute the only evidence of the Travel Act violation. Defendant committed the crime once he travelled to New York from North Carolina in order to purchase the cocaine and, in fact, purchased it there. To bar a subsequent state prosecution because of a federal prosecutor's discretion in electing to present certain evidence to satisfy a particular component of the federal crime, would frustrate the overall purpose of New Jersey criminal law which is to prevent and punish crimes that occur in New Jersey. Thus, we reject defendant's argument on this issue as well.
In light of our conclusion that the federal conviction was not based upon the same conduct as the subsequent conviction in state court, and that each conviction required proof of a fact not required by the other, we need not consider defendant's contention that the Travel Act, the conspiracy charge, and N.J.S.A. 2C:35-5 seek to prevent similar harms of similar gravity.

*493 II
Defendant raises as plain error the trial judge's failure to charge the jury concerning its duty to determine the credibility of defendant's out-of-court admission.
As will be recalled from the statement of facts, defendant's oral statement was incriminatory. In a pretrial motion, the trial judge determined that defendant's statement was admissible as not being in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
In State v. Hampton, 61 N.J. 250, 294 A.2d 23 (1972), our Supreme Court held that once the trial judge makes a determination that the statement is admissible,
then, without being advised of the court's decision, the jury shall be instructed that they should decide whether in view of all the same circumstances the defendant's confession is true. If they find that it is not true, then they must treat it as inadmissible and disregard it for purposes of discharging their function as factfinders on the ultimate issue of guilt or innocence.
[Id. at 272, 294 A.2d 23 (emphasis added).]
The Hampton rule was codified as a part of our evidence rules, first in Evid.R. 8(3), and now in N.J.R.E. 104(c) the rule applicable at the time of trial. In pertinent part, the rule states that "[i]f the judge admits the statement the jury shall not be informed of the finding that the statement is admissible but shall be instructed to disregard the statement if it finds that it is not credible." N.J.R.E. 104(c) (emphasis added).
In State v. Boyle, 198 N.J. Super. 64, 486 A.2d 852 (App.Div. 1984), this court held that "[t]he mandate in Hampton and the directive in the Rules of Evidence are designed to `insure to a defendant an unfettered factual consideration by the jury of the credibility' of all or part of his confession." Id. at 74, 486 A.2d 852 (quoting State v. Bowman, 165 N.J. Super. 531, 537, 398 A.2d 908 (App.Div. 1979)). Further, the Bowman court held that a defendant has "a federal constitutional right to raise the issue of voluntariness before the trial judge and upon an adverse ruling to place in issue the credibility of his statement[,]" and that the denial of that right was reversible error. Ibid. The decision in *494 Boyle was raised in the context of the trial judge's refusal to charge Hampton in the face of a defendant's request.
However, the treatment of the issue in the context of a defendant's failure to request the instruction, as in this case, has received somewhat uneven treatment. In State v. Nutter, 258 N.J. Super. 41, 609 A.2d 65 (App.Div. 1992), this court found reversible error where the trial court, in the absence of a request, "mistakenly failed to instruct the jury on its duty to determine if defendant's statement to the police was credible." Id. at 59-60, 609 A.2d 65. In considering the charge as a whole, the court concluded that nothing could be found to ameliorate the error. Id. at 60, 609 A.2d 65.
A contrary result was reached by another part of this court in State v. Setzer, 268 N.J. Super. 553, 634 A.2d 127 (App.Div. 1993), certif. denied, 135 N.J. 468, 640 A.2d 850 (1994). In that case, defense counsel did not request a Hampton charge, and it was not given. On appeal, the court held that the failure to give the charge was not plain error because the trial court had "clearly and repeatedly instructed the jury that it was to consider the credibility of all of the testimony which included the testimony as to defendant's statement." Id. at 563-65, 634 A.2d 127. The opinion did not attempt to distinguish Nutter.
Later, in State v. Laboy, 270 N.J. Super. 296, 637 A.2d 184 (App.Div. 1994), another part of this court, having reversed the conviction before it on other grounds, rejected in dictum the notion that the failure to charge Hampton is per se plain error. Id. at 310-311, 637 A.2d 184. Nevertheless, Laboy expressly noted that while neither the failure to charge Hampton, nor the failure to charge State v. Kociolek 23 N.J. 400, 421-22, 129 A.2d 417 (1957),[2] taken alone, constituted plain error, such failure in the *495 aggregate might combine to do so. State v. Laboy, supra, 270 N.J. Super. at 310-311, 637 A.2d 184. Cf. State v. Jordan, 285 N.J. Super. 589, 667 A.2d 1094 (App.Div. 1995) (where a majority of this part, rejecting the consequence of the aggregate failure, held that a Hampton charge was not required where defendant gave two conflicting statements and it was obvious the jury had to resolve which one was true.)
While the failure to give a Hampton charge in a case where a defendant adopts as true the statement given to the police, may not raise a Hampton issue at all, that is not what occurred in this case. The accuracy of the trooper's recollection of defendant's statement and defendant's condition at the time he made the statement were placed in issue by defense counsel's cross examination and summation. Inasmuch as the jury asked the court to have the "interview" between defendant and the trooper read back to them, we can reasonably infer that the jury thought the content of defendant's statement was important in determining his guilt or innocence.
It is well established that an erroneous charge in a criminal case is a poor candidate for rehabilitation by way of the harmless error rule. See e.g., State v. Wilson, 128 N.J. 233, 241, 607 A.2d 1289 (1992); State v. Vick, 117 N.J. 288, 289, 566 A.2d 531 (1989); State v. G.S., 278 N.J. Super. 151, 166, 650 A.2d 819 (App.Div.), certif. denied, 142 N.J. 517, 665 A.2d 1110 (1995). Inasmuch as the Hampton rule as codified in our Rules of Evidence is framed in mandatory terms, we hold that the failure to charge Hampton is not one of those trial errors that can be justified in terms of harmless error where a defendant has not adopted as true statements attributable to him while in police custody.

*496 III
Defendant maintains that the trial judge erred when he concluded that the State trooper had probable cause to search the vehicle. Defendant raised the identical motion during his federal trial and the motion was denied. The State moved to collaterally estop defendant from raising the same motion in this state court proceeding. The trial judge refused to apply collateral estoppel and made an independent analysis of the record before him. He was correct in doing so. The New Jersey Supreme Court has interpreted the New Jersey Constitution to provide greater protection than the federal constitution in such circumstances. State v. Pierce, 136 N.J. 184, 642 A.2d 947 (1994); State v. Hempele, 120 N.J. 182, 576 A.2d 793 (1990).
A warrantless search of an automobile is justified "where police have probable cause to believe that the vehicle contains contraband or evidence of criminal activity," State v. Martin, 87 N.J. 561, 567, 436 A.2d 96 (1981), "or in connection with the search for weapons on an objectively-reasonable belief that an occupant of the vehicle is dangerous and may gain access to weapons." State v. Pierce, supra, 136 N.J. at 205, 642 A.2d 947. The trial judge concluded that the trooper had probable cause under the first justification but not the second.
The surrounding circumstances sufficiently created probable cause that criminal activity had occurred or was occurring. The trooper had more than furtive gestures upon which to form probable cause. See State v. Lund, 119 N.J. 35, 47, 573 A.2d 1376 (1990). Along with the furtive gestures, the trooper observed the canister at defendant's feet which corroborated his suspicion that defendant had attempted to conceal or retrieve a weapon but had been unable to do so. Further, after defendant exited the vehicle, the trooper noticed that his eyes were bloodshot, his pupils were abnormal, he avoided eye contact, was nervous, and, more importantly, denied knowledge of the existence of the canister that was located at his feet. See State v. Young, 87 N.J. 132, 144, 432 A.2d 874 (1981) ("defendant's disavowal of ownership or knowledge of *497 the suitcase increased the trooper's suspicions"). Based on those observations and detecting no odor of alcohol, the trooper testified that he reasonably believed that defendant was under the influence of a narcotic. Furthermore, he determined from the Turnpike ticket, and the passenger's statement, that defendant had lied when he said that he had traveled from Jersey City.
The totality of the circumstances were suitable factors allowing the trooper to reasonably believe that a weapon or contraband was in the vehicle. See State v. Lund, supra, 119 N.J. at 48, 573 A.2d 1376. Specifically, given the totality of the circumstances, and given the fact that the location of the canister matched defendant's furtive gestures, the trooper had probable cause to suspect that the canister contained the contraband. Therefore, we agree with the trial judge that the opening of the canister was a valid search.
In view of our conclusion under Point II above, defendant's conviction is reversed and the matter is remanded for a new trial in accord with this opinion.
WEFING, J.A.D., concurring.
I agree with my colleagues that defendant's prosecution in New Jersey was not precluded by his earlier federal court convictions for conspiracy to distribute cocaine and violation of the Travel Act. I also concur with their conclusion that the trooper had probable cause to search defendant's vehicle. Further, I agree that in the context of this matter, and the record that is presented here, the trial court's failure to instruct the jury in accordance with State v. Hampton, 61 N.J. 250, 294 A.2d 23 (1972) and N.J.R.E. 104(c) was reversible error, even when defendant did not except to the charge as given. I write separately to address the issue raised by the trial court's failure to include within its instructions the principles enunciated in State v. Hampton, 61 N.J. 250, 294 A.2d 23 (1972) and N.J.R.E. 104(c).
This case is factually distinguishable from State v. Jordan, 285 N.J. Super. 589, 667 A.2d 1094 (App.Div. 1995) in which we concluded that where a defendant has given two conflicting statements to *498 the police, both of which are admitted at trial, failure to instruct the jury in accordance with State v. Hampton and N.J.R.E. 104(c) is not plain error for in such an instance the jury "had to know and understand that they would have to decide which of these versions was credible." State v. Jordan, 285 N.J. Super. at 595, 667 A.2d at 1097. We noted in Jordan that defendant admitted killing the victim but contended it was an accident. We considered the record in Jordan in "sharp contrast to situations in which a defendant at trial denies either the act or the confession or both." Id.
The record presented here, however, has no such saving features. I thus agree with my colleagues that defendant's conviction must be reversed and the matter remanded for a new trial.
NOTES
[1] At trial the trooper testified that defendant said he had come from Jersey City. However, the police report and grand jury testimony revealed that defendant stated he was coming from Newark.
[2] Defendant does not contend in this case that the failure to charge State v. Kociolek, supra, rises to the level of plain error. See State v. Travers, 70 N.J. Super. 32, 38, 174 A.2d 747 (App.Div. 1961), and State v. Campisi, 47 N.J. Super. 455, 460, 136 A.2d 292 (App.Div. 1957) (both cases holding that failure to give a Kociolek instruction was harmless error).