289 N.J. Super. 43 (1996)
672 A.2d 1254
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
AKBAR JACKSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 14, 1996.
Decided March 21, 1996.
*45 Before Judges DREIER, KESTIN and CUFF.
Susan Herman, Assistant Deputy Public Defender argued the cause for appellant (Susan L. Reisner, Public Defender, attorney; Ms. Herman, of counsel and on the brief).
Linda A. Rinaldi, Deputy Attorney General argued the cause for respondent (Deborah T. Poritz, Attorney General; Ms. Rinaldi, of counsel and on the brief).
The opinion of the court was delivered by DREIER, P.J.A.D.
*46 Defendant appeals from convictions of first-degree robbery, N.J.S.A. 2C:15-1; second-degree robbery as a lesser-included offense of first-degree robbery, N.J.S.A. 2C:15-1; two counts of third-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5b; second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4a; aggravated assault on a police officer as a lesser-included offense of second-degree aggravated assault, N.J.S.A. 2C:12-1b(1); and fourth-degree resisting arrest, N.J.S.A. 2C:29-2. Defendant had originally also been charged with first-degree attempted murder, but was found not guilty of this charge. After merger of various offenses, defendant was sentenced on the two first-degree robberies to consecutive terms of eighteen years with a seven-year parole disqualifier, and ten years with a four-year parole disqualifier, the total sentence therefore being twenty-eight years with an eleven-year parole disqualifier.
Defendant accosted a postal worker on post office property as she was going to work at 4:30 a.m. He threatened her at gunpoint and demanded her car keys. They struggled, and he stole her pocketbook, taking her car keys and other personal items. He immediately went to where she had parked and drove off in her car. The robbery occurred on federal property, but the car was parked in a lot on state land. Another postal worker observed defendant and later identified him both in a photographic line-up and in court. The woman who was robbed identified defendant solely from a photograph; she was unable to identify him in court.
Two days after the robbery, a police officer observed the stolen car and radioed for assistance. After a brief chase, the stolen car crashed and the driver and the passenger fled. The officer recognized the passenger, but chased the driver. During the chase, the officer threatened to shoot the individual if he did not stop, and finally caught him. The individual turned and hit the officer with a blunt object. The officer blacked out, and when he awoke, the individual was straddling and punching him. He recognized the assailant, although he could not immediately remember *47 his name. After the assailant struck the officer several times, he allegedly reached for the officer's gun, pointed at the officer and pulled the trigger. The gun, however, misfired. The officer testified that it had never misfired before and subsequent testing showed that it was in working order. The gun had been fully loaded. The assailant fled with the officer's gun and the officer was taken to the hospital.
In the ensuing search for defendant, he was sighted once and fled, but later in the day his step-father arranged to have defendant turn himself in. Defendant was read his rights, and the step-father testified that defendant then asked for an attorney. During the processing, defendant asked the processing officer what the charges were against him. When he was told that one of the charges was the attempted murder of the officer, defendant responded he would "go for the robbery at the Post Office, but I didn't hit[1] the cop." Defendant was immediately readvised of his rights. He then gave a second, more formal, oral statement which the officer included in his report. Defendant admitted he stole the car and then gave it to two others, one of whom had been the passenger when the car had been apprehended. Defendant claimed he had heard that the other individual had the initial officer's gun, and he had seen that individual put the gun under his refrigerator. Defendant identified the individual who allegedly had the weapon, and the police proceeded to the individual's house. He consented to a search and the officer's gun was found under the refrigerator. The individual testified for the State that on the night before his arrest defendant had come to his house and told him that he had an altercation with the police and had beaten an officer. Defendant had remained for the night and left in the morning.
Defendant raises five points on this appeal, the first with four subparts.

*48 POINT I

EXTRAORDINARY EVENTS WHICH OCCURRED IN THE ESSEX COUNTY COURTHOUSE IMMEDIATELY PRIOR TO DEFENDANT'S TRIAL MADE A FAIR TRIAL FOR DEFENDANT IMPOSSIBLE, REQUIRING A REVERSAL OF HIS CONVICTIONS. (U.S. Const., Amend. VI; N.J. Const. (1947), Art. I, par. 10).
A. Defendant should have been granted an adjournment due to extensive publicity concerning the murder of a police officer five days earlier in the same courthouse and the potential for extreme prejudice accruing to the defendant as a result of the similarities of that case to his charges.
B. Defendant's request for individual voir dire of jurors should have been granted. The insufficient voir dire denied defendant his right to a fair trial. (Partially raised below).
C. A mistrial should have been granted because of the egregious misconduct of the prosecutor in summation.
D. A new trial should have been granted for the same reasons.
POINT II
THE TRIAL COURT'S FAILURE TO DISMISS COUNTS ONE, TWO AND THREE FOR LACK OF JURISDICTION IN NEW JERSEY, OR IN THE ALTERNATIVE, TO PUT THE STATE TO ITS PROOFS OF JURISDICTION AND TO SUBMIT THE FACTUAL ISSUE OF JURISDICTION TO THE JURY, DENIED DEFENDANT HIS RIGHT TO DUE PROCESS OF LAW AND TRIAL BY JURY ON ALL FACTUAL ISSUES. U.S. Const. Amends. V, VI, XIV; N.J. Const. (1947), Art. I, pars. 1, 9, 10.
POINT III
THE APPELLATE DIVISION ERRED IN HOLDING, ON INTERLOCUTORY APPEAL, THAT SEVERANCE SHOULD NOT BE GRANTED AS TO COUNTS ONE, TWO AND THREE OF THE INDICTMENT.
POINT IV
THE TRIAL JUDGE'S FAILURE TO INSTRUCT THE JURY TO SCRUTINIZE THE CIRCUMSTANCES OF DEFENDANT'S ORAL STATEMENT TO THE POLICE DEPRIVED DEFENDANT OF A FAIR TRIAL.
POINT V
THE MATTER MUST BE REMANDED FOR RESENTENCING SINCE THE SENTENCE IMPOSED WAS MANIFESTLY EXCESSIVE AND DISPROPORTIONATE TO THE CRIMES. IN ADDITION, THE TRANSCRIPT OF SENTENCING IS INCONSISTENT WITH THE SENTENCE REFLECTED ON THE JUDGMENT OF CONVICTION, REQUIRING A REMAND.

I
The issues raised in defendant's first point are clearly without merit; therefore, we will only briefly discuss the subpoints. R. 2:11-3(e)(2).
*49 Defendant initially contends that a shooting of an officer in the Essex County Courthouse just prior to the commencement of defendant's trial should have caused the trial judge to grant an adjournment. This issue was brought before us on an interlocutory appeal where we approved the adjournment denial. We see no reason to depart from the earlier ruling. State v. Reldan, 100 N.J. 187, 204, 495 A.2d 76 (1985). Even if the law of the case doctrine did not apply, this was a matter within the trial judge's control and there was no showing of sufficient similarity or effect upon this jury for us to have reversed on this basis.
Likewise, defendant's request for individual voir dire of jurors as opposed to the collective voir dire was a matter to be resolved within the discretion of the trial judge. The court held a proper voir dire as required by State v. Bey (I), 112 N.J. 45, 86-87, 548 A.2d 846 (1988).
Defendant also contends that the prosecutor's summation was overly inflammatory and constituted sufficient misconduct to warrant a new trial. The judge immediately chastised the prosecutor for each improper statement, and gave definite and timely charges to disregard the improper statements. We find that the net effect of the improper comments, after the judge's instructions, warranted neither a mistrial nor a new trial.

II
Defendant's second point will be discussed in more detail because the issue may arise again at retrial. Defendant claims that the court lacked jurisdiction over the robbery in counts one through three of the indictment because it occurred on post office premises and thus was subject exclusively to federal jurisdiction. The issue was raised in a timely fashion at defendant's new trial motion, even though no motion was made before trial. State v. Streater, 233 N.J. Super. 537, 541, 559 A.2d 473 (App.Div.), certif. denied, 117 N.J. 667, 569 A.2d 1358 (1989); R. 3:10-2(e); Pressler, Current N.J. Court Rules, comment on R. 3:10-2(e) (1995). The State does not dispute that the United States District Court has *50 exclusive jurisdiction of a crime committed solely on federal property.
One could look at this crime and say that the robbery was complete when the handbag with the car keys was stolen on federal property, and thereafter there was only a theft of the car, which would be subject to State jurisdiction. But we see the facts here as an armed robbery, the assault portion of which occurred on the federal post office property with the object of obtaining possession of the car, not merely the pocketbook containing the keys. Defendant went directly to the car, indicating that he had watched the victim park before he accosted her and then sought the car. Thus, while defendant seized the handbag at gunpoint on federal property, his intent was to obtain possession of the victim's car; therefore, the robbery was not completed until the keys were used to take the car on the municipal street, within State jurisdiction. Since elements of the crime occurred on both State and federal property, the federal and State courts had concurrent jurisdiction under N.J.S.A. 2C:1-3a(1) and the "dual sovereignty" doctrine. Heath v. Alabama, 474 U.S. 82, 88-89, 106 S.Ct. 433, 437-38, 88 L.Ed.2d 387, 394-95 (1985) (establishing a clear basis under New Jersey law for this prosecution). While the basis upon which we have chosen to uphold jurisdiction is different from that adopted by the trial judge, the conclusion he reached was correct.
Similarly, the court also properly exercised jurisdiction for the weapons convictions in count two. While the use of the weapon during the robbery was clearly on federal property, the handgun of necessity had to be carried onto the post office property, and thus was possessed on state land with the intention to use it unlawfully against another. Cf. State v. Lopez, 213 N.J. Super. 324, 329-30, 517 A.2d 457 (App.Div. 1985), certif. denied, 103 N.J. 480, 511 A.2d 657 (1986). The unlawful possession clearly occurred off of federal property.

III
We also discuss defendant's third point for its effect on a retrial. Here, he asserts an issue that he raised by way of a *51 motion prior to trial. He claims that the first three counts concerning the robbery of the postal worker should have been severed. The trial judge had initially agreed with defendant, but on the State's interlocutory appeal we summarily reversed in a short opinion. We stated:
If the matters were severed, the circumstances of the alleged carjacking (armed robbery) would be admissible in the attempted murder case to show the defendant's motive to prevent apprehension by any means possible in order to avoid a substantial prison term for armed robbery. In the armed robbery case, defendant's actions to avoid apprehension (including the attack on the police officer) would constitute flight from the initial crime. Since the circumstances of each crime would be most probably admissible in the trial for the other, we see no basis to sever counts 1, 2 and 3 for a separate trial.
The law of the case established by our prior appellate review controls, there being no intervening change in the law, or new facts established justifying reconsideration. State v. Reldan, supra.

IV
Point four contains the most difficult aspect of this case: the court's refusal to give the charges required by State v. Hampton, 61 N.J. 250, 271-72, 294 A.2d 23 (1972) and State v. Kociolek, 23 N.J. 400, 421-22, 129 A.2d 417 (1957).
The court determined that the written and oral statements made by defendant were spontaneous admissions, and not the subject of questioning, and therefore a Hampton/Kociolek charge was not needed. The charges required by Hampton and Kociolek, however, are not dependent on a defendant being questioned. Any statement of a defendant is subject to their rules.
Hampton requires that a jury be instructed to view all the circumstances to determine whether a defendant's written, oral or recorded statement is true. If it finds it is not true, it must treat it as inadmissible and disregard it. State v. Jordan, 285 N.J. Super. 589, 603-04, 667 A.2d 1094 (App.Div. 1995) (Pressler, P.J.A.D., dissenting), (appeal pending in the Supreme Court). This principle is codified in N.J.R.E. 104(c), which contains no qualification for the source of defendant's statements. The rule reads:

*52 (c) Preliminary hearing on admissibility of defendant's statements. Where by virtue of any rule of law a judge is required in a criminal action to make a preliminary determination as to the admissibility of a statement by the defendant, the judge shall hear and determine the question of its admissibility out of the presence of the jury. In such a hearing the rules of evidence shall apply and the burden of persuasion as to the admissibility of the statement is on the prosecution. If the judge admits the statement the jury shall not be informed of the finding that the statement is admissible but shall be instructed to disregard the statement if it finds that it is not credible. If the judge subsequently determines from all of the evidence that the statement is not admissible, the judge shall take appropriate action.
[N.J.R.E. 104(c) (emphasis added)].
Kociolek provides for a similar but more detailed instruction, stressing the inherent weakness in oral unrecorded confessions. 23 N.J. at 421-22, 129 A.2d 417. This problem is further explained in Judge Pressler's dissent in Jordan. 285 N.J. Super. at 604-05, 667 A.2d 1094. Since Hampton focuses more on the general problem of confessions as incorporated in N.J.R.E. 104(c), we look to Kociolek as the general expression of the needed treatment of a defendant's oral statement. We quote:
Apropos of the testimony of the witness Umholtz of admissions made to him by the accused, not committed to writing, testimony said to be at variance in a vital particular with that given by the witness at the earlier trial, we think the county judge erred in refusing to charge the request that the jury "should receive, weigh and consider such evidence with caution," in view of the generally recognized risk of inaccuracy and error in communication and recollection of verbal utterances and misconstruction by the hearer.
There are inherent weaknesses in this character of testimony: faulty memory, the danger of error in understanding and repetition. Such are the reasons for the rule. Bankers Trust Co. v. Bank of Rockville Center Trust Co., 114 N.J. Eq. 391, 400 [168 A. 733] (E. & A. 1933). "All verbal admissions" of the accused "are received with caution." Wilson v. United States, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090 (1896).
"Aside from the danger of fabrication, verbal admissions are regarded as unreliable evidence, because experience shows that they are frequently misunderstood, imperfectly remembered, and inadvertently made." Tousey v. Hastings, 194 N.Y. 79, 86 N.E. 831 (Ct. App. 1909).
There is a "general distrust of testimony reporting any extra-judicial oral statements alleged to have been made, including a party's admissions"; the "great possibilities of error in trusting to recollection-testimony of oral utterances, supposed to have been heard, have never been ignored; but an antidote is constantly given by an instruction to the jury against trusting overmuch the accuracy of such testimony"; "Verbal precision is of course important to the correct understanding *53 of any verbal utterance, whether written or oral, because the presence or absence or change of a single word may substantially alter the true meaning of even the shortest sentence." Wigmore, Evidence, sections 1056, 2094. See 31 C.J.S., Evidence, § 382, p. 1178. In Tilton v. Beecher, 2 Abbott's Rep. 837 (1875), Mr. Justice Neilson remarked:
"Perhaps the best statement of [the general principle] has been given in Starkie on Evidence, to the effect that this kind of testimony is dangerous, first, because it may be misapprehended by the person who hears it; secondly, it may not be well-remembered; thirdly, it may not be correctly repeated."

See also Earle v. Picken, 5 C. & P. 542 (1833).
[State v. Kociolek, supra, 23 N.J. at 421-22, 129 A.2d 417.]
In some cases we have found that the absence of an unrequested Hampton charge is harmless error, and in others we have found it to be a basis for reversal. Compare State v. Jordan, supra, 285 N.J. Super. at 594-95, 667 A.2d 1094 and State v. Setzer, 268 N.J. Super. 553, 562-65, 634 A.2d 127 (App.Div. 1993), certif. denied, 135 N.J. 468, 640 A.2d 850 (1994) with State v. Jones, 287 N.J. Super. 478, 484, 671 A.2d 586, 588-89 (App.Div. 1996) and State v. Nutter, 258 N.J. Super. 41, 43, 609 A.2d 65 (App.Div. 1992) (dictum) (reversible if could have affected the outcome). If requested, however, the charge certainly should be given. State v. Boyle, 198 N.J. Super. 64, 73-74, 486 A.2d 852 (App.Div. 1984); State v. Kennedy, 135 N.J. Super. 513, 522, 343 A.2d 783 (App.Div. 1975).
This case parallels Kociolek in that there were two oral unrecorded statements. But here, unlike Jordan and Jones, there was a request for a Hampton/Kociolek charge, and thus defendant is not required to meet the "plain error" standard imposed in those cases. R. 2:10-1. Rather, the State must show that the failure to charge was harmless error.
In the case before us, there was strong evidence implicating defendant in the initial crime, namely, his possession of the car and car keys and his identification by the independent witness at the scene of the robbery. The assault on the police officer, however, was supported only by the officer's testimony and that of defendant's friend concerning the source of the gun.
*54 The State contends that it is clear from the jury's verdict that while it believed defendant's statement that he had robbed the woman at the post office, it did not believe the part of the statement where he said he had not "hit the cop." The words "hit the cop," however, could be taken either as a denial of an assault on the police officer, or as a denial of an attempt on the police officer's life (using the colloquial term "hit"). Since the jury found the defendant guilty of the robbery at the post office, of the robbery of the gun from the officer, and of the assault on the police officer, the jury may have given full credence to the statement, taking the defendant's words as meaning that he did not attempt to kill the officer. Therefore, the jury's consideration of the statement could have been central to the case. On these facts, a clear instruction was mandatory.[2]
A jury might find the thrust of defendant's alleged initial statement was exculpatory, in that he may have been merely denying the charge involving the attack on the officer, since defendant apparently felt that he had been caught red-handed in possession of the stolen car by an officer who had recognized him. But a jury may have taken the statement as a denial of any struggle with the officer which, in the face of the officer's account, may have prejudiced defendant. As Judge Pressler noted in Jordan, "the crucial issue was whether the [first] oral statement, as construed by the police and the prosecutor, was truthful ... or whether defendant's second more complete oral statement was more accurate." 285 N.J. Super. at 605, 667 A.2d 1094.
*55 Correct charges are especially vital in criminal cases, and "[i]t is virtually axiomatic that an erroneous charge in a criminal case is a poor candidate for rehabilitation by way of the harmless error rule." Id. at 606, 667 A.2d 1094. While not subscribing to the per se rule, we must reverse on this point and remand for a new trial. Given our disposition of this issue, the sentencing issue is moot.
Defendant's convictions are reversed, and the matter is remanded to the Law Division for a new trial.
NOTES
[1] It was unclear whether the statement referred to the striking of the officer or to the vernacular meaning of "hit," i.e., to an attempted murder.
[2] It is a close question whether the failure to give a requested Hampton/Kociolek charge is per se reversible error. The State in fact notes in its brief that it "is constrained to agree that the trial judge should have given the requested Hampton charge." A similar dispute, but involving a non-requested Hampton charge, separated the majority and dissent in Jordan. We cannot subscribe to the Jordan dissent's per se error rule, even for a requested charge. In the appropriate case, the error may be harmless. For instance, if the crime had been videotaped and was committed before numerous unimpeachable witnesses with strong additional circumstantial evidence, the failure to give a requested Hampton/Kociolek charge concerning a defendant's oral statements should not justify the time and expense of a retrial.